TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00229-CR







Paul Alan Riley, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0941984, HONORABLE TOM BLACKWELL, JUDGE PRESIDING







 Paul Alan Riley was charged with sexually assaulting a child by penetrating her mouth with
his sexual organ. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii) (West Supp. 1997). The jury found
him guilty and sentenced him to ten years in the Texas Department of Corrections, probated, and fined him
$10,000. Mr. Riley brings thirteen points of error, all implicating his defense at trial that the fourteen-year-old victim was promiscuous as a matter of law. We will affirm the trial court's judgment of conviction.


Background


 This sordid tale involves Paul Riley, Sr., and his three sons, Paul, Jr., Matthew, and David, 
and an emotionally disturbed fourteen-year-old girl we will call R.M. Paul, Jr. met R.M in middle school
where she was a special education student; his attention led this young woman to fall under Paul, Jr.'s sway. 
Initially he offered her money, alcohol, or drugs to pose for nude photographs. Next Paul, Jr. directed her
to perform sexual acts with him, and then with his two brothers and various friends. R.M. was often paid
for these sexual favors--at times with cash, at times with alcohol or drugs. How Paul, Jr. manipulated
R.M. or why she became his thrall is not apparent from the record. Eventually R.M. committed acts of
prostitution with all three Riley brothers and a few of their friends, always under the direction of Paul, Jr. 
She admitted to these sexual activities with the young Rileys and to drinking and using drugs in their
company. R.M. also testified that she had never performed sexual acts with men in exchange for anything
before coming under the influence of Paul, Jr. 

 Paul, Jr. lived with his paternal grandfather, while his brothers Matthew and David lived
in a nearby duplex with Paul, Sr. At times R.M. lived with her parents, but their relationship was troubled;
she often ran away from home, winding up at one Riley household or the other. She testified that at times
when she was living at home, Paul, Jr. would summon her by telephone in the middle of the night and she
would go out to do his bidding. 

 On August 4, 1993, R.M. and the three Riley brothers and some friends were hanging out
at the father's duplex. It was Paul, Sr.'s birthday. When Paul, Sr. came home, he and Paul, Jr. got into
an argument. Afterwards Paul, Jr. called R.M. aside and said he wanted to pay her to give his father a
"blow job" for his birthday. "No, no, no, no," she refused. But as Paul, Jr. continued to press her, she
gave in and agreed to do it for $35. R.M. and Paul, Jr. went downstairs together, she entered the father's
darkened bedroom alone and went to the side of his bed. He unbuttoned his pants, she dropped to her
knees and delivered the birthday present. Paul, Sr. said nothing and did nothing to prevent the young girl
from giving him a "blow job." Paul, Sr. was thirty-seven years old, R.M. was fourteen. Paul, Jr. stood
outside the bedroom laughing. R.M. passed him as she departed and he gave her $35. She walked to a
nearby gas station and called her mother who picked her up and took her home. 

 Some six months later, while investigating allegations of sexual misconduct and drug
trafficking at the grandfather's house, an Austin police officer asked R.M. to come in for an interview. She
and her mother came to the police station, and during that interview she made her initial outcry statement
about the earlier incident involving Paul, Sr. R.M. later gave the police a signed statement detailing the
assault. R.M. was placed in Shoal Creek Hospital for substance abuse and psychological treatment; Paul,
Sr. was arrested and tried for sexual assault of a child. The jury found him guilty and he brings this appeal.


Instructed Verdict


 In his first three points of error, Paul, Sr. complains that the trial court should have granted
his motions for instructed verdict, new trial, and acquittal because R.M.'s conduct was promiscuous as a
matter of law. Before September 1, 1994, promiscuity was considered a defense to sexual assault of a
child fourteen years of age or older. (1) The legislature has wisely abolished this defense, (2) but it was available
to appellant because R.M. turned fourteen in January 1993 and this offense occurred in August 1993. 
Paul, Sr. not only asserted the defense, he sought to remove the issue from the jury's consideration by
insisting that R.M.'s conduct was promiscuous as a matter of law. The trial court denied the motion for
instructed verdict and submitted the issue to the jury. The jury was not persuaded that R.M.'s conduct was
promiscuous and reached a verdict of guilty. 

 When it enacted the defense, the legislature did not define promiscuous conduct. This
Court has held that promiscuity involves "a variety of consensual sexual conduct with a variety of partners"
continuing over a reasonable period of time. Boutwell v. State, 653 S.W.2d 100, 103 (Tex.
App.--Austin 1983), rev'd on other grounds, 719 S.W.2d 164 (Tex. Crim. App.1985). Another court
of appeals has found promiscuous the "indiscriminate grant of physical favors to persons of the opposite
sex without any requirement of love." Connally v. State, 838 S.W.2d 646, 647 (Tex. App.--Corpus
Christi 1992, no pet.). One dictionary defines promiscuous conduct as that "characterized by a lack of
discrimination; specifically, engaging in sexual intercourse indiscriminately or with many persons." 
Webster's New Twentieth Century Dictionary 1440 (2d ed. 1983). 

 Paul, Jr. and his brother David testified that R.M. had sexual intercourse or oral sex with
each of them, with their brother Matthew and with two or three of their friends. Paul, Jr. testified that he
did not "pay" R.M. for sexual favors, he only "loaned" her money on these occasions; he admitted giving
R.M. alcohol and drugs in exchange for sex and testified that she was almost always under the influence
of alcohol or drugs when she was at the Riley households. R.M. admitted to having oral sex with at least
four individuals (including the three Riley brothers) after her fourteenth birthday and before the incident with
Paul, Sr. 

 Based on this evidence, defense counsel asked the trial court to grant an instructed verdict,
arguing that R.M.'s conduct was promiscuous as a matter of law and an absolute defense to the offense
charged. Appellant relies on Ormand v. State, 697 S.W.2d 772 (Tex. App.--Corpus Christi 1985, no
pet.), to support his proposition that the evidence below established promiscuity as a matter of law. In
Ormand a twenty-six-year-old high school coach was charged with the sexual assault of a fifteen-year-old
student; the case was tried on stipulated facts to the court. The student voluntarily had sexual intercourse
on several occasions with four young men, ages seventeen or eighteen, before her sexual encounter with
the coach; she had sex with two of them on the same day. All the young men's allegations were
substantially confirmed by the complainant. Evidence of this level of sexual activity raised the issue of
promiscuity and because the evidence was not "explained, controverted, disputed or rebutted in anyway,"
the court held the complainant's conduct promiscuous as a matter of law. Id. at 773. 

 The State presented evidence that Paul, Jr. exercised a sadistic and powerful influence over
this emotionally disturbed, special education student from a troubled home. R.M. testified that Paul, Jr.
exerted some inexplicable control over her, and that she posed nude and performed sexual acts because
of his domination and influence, not of her own volition. R.M. testified that before she met Paul, Jr. she had
never performed sexual acts with men in exchange for money or anything. The number of sexual
encounters this fourteen-year-old had before her encounter with appellant was also disputed. The judge
noted that much of the testimony regarding her sexual activity was controverted hearsay:

You get a lot of innuendo and suspicion and you get a lot of talk by males about
intercourse with females, and being a male, I recognize that there's a lot of puffing going
on among young males. It appears to me that it's a question of fact, really, and nothing has
been proven as a matter of law that all of this occurred.



Unlike Ormand in which the facts were stipulated and the sexual conduct was never explained, here the
State insisted that R.M.'s sexual activities were directed, against her will, by a Svengali-like character who
callously exploited a troubled young girl for his own sexual pleasure and that of his brothers, his friends, and
his father. It was the State's theory that the father, at least, should have known better. 

 Because the circumstances in which the defense may arise vary greatly, the legislature
wisely elected not to define promiscuity but to leave its meaning to the wisdom of the jury. Johnson v.
State, 933 S.W.2d 195, 201 (Tex. App.--Waco 1996, pet. ref'd). Hence, the weight and credibility of
the evidence of promiscuous conduct should be determined by the jury, not by the trial court. Id. at 203. 

 A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a
challenge to the legal sufficiency of the evidence to support the conviction. Madden v. State, 799 S.W.2d
683, 686 (Tex. Crim. App. 1990), cert. denied, 499 U.S. 954 (1991). In reviewing the legal sufficiency
of the evidence, we consider all the evidence in the light most favorable to the verdict, Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988), to determine if any rational trier of fact could have found
the elements of sexual assault of a child and rejected the defense of promiscuous conduct beyond a
reasonable doubt. Lindquist v. State, 922 S.W.2d 223, 225 (Tex. App.--Austin 1996, pet. ref'd) (citing
Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) and Saxton v. State, 804 S.W.2d 910, 914 (Tex.
Crim. App. 1991)). If the evidence is sufficient to sustain the conviction, the trial judge did not err in
overruling the motion for instructed verdict. The evidence that Paul, Sr. committed the offense is not
disputed and clearly supports the conviction unless R.M.'s conduct was promiscuous. Based on the
evidence presented, any rational trier of fact could have found that R.M. was so enthralled by Paul, Jr. that
she committed various sexual acts involuntarily at his direction and thus her conduct was not promiscuous
beyond a reasonable doubt. We overrule the first three points of error. 


Videotaped Statement


 In points of error five, six, and seven, appellant complains that the trial court erred in
denying his motion for mistrial after the State withheld exculpatory material in violation of his state and
federal constitutional rights. The evidence in question is a videotaped conversation between R.M. and Pete
Collins, the police officer to whom she made her outcry statement. Under Brady v. Maryland, 373 U.S.
83 (1963), the prosecutor has an affirmative duty to turn over material, exculpatory evidence, including
impeachment evidence. Evidence is exculpatory if it tends to excuse or clear the defendant from guilt. 
Black's Law Dictionary 566 (6th ed. 1990). Evidence is material if there is a reasonable probability that,
had the evidence been disclosed to the defense, the outcome of the proceeding would have been different
or confidence in the outcome of the trial would be undermined. United States v. Bagley, 473 U.S. 667,
682 (1985). Due process is violated only if a prosecutor (1) fails to disclose evidence (2) favorable to the
accused (3) that creates a probability of a different outcome. Bagley, 473 U.S. at 682; McFarland v.
State, 928 S.W.2d 482, 511 (Tex. Crim. App. 1996).

 The evidence allegedly withheld is State's Exhibit No. 2, a videotaped conversation
between Officer Collins and R.M. prior to her outcry statement. (3) The prosecutor explained that there were
more than seventy tapes relating to this cause. Some were tapes confiscated from the Riley household in
connection with this and other charges; some were taped interviews of other witnesses. The prosecutor
said many of the tapes had not been located or catalogued before the trial and that her own investigators
located the tape in question the morning of trial. The prosecutor and defense counsel both viewed the tape
for the first time at the noon recess. The State argues that under the circumstances the newly discovered
tape was timely provided to appellant. We note that appellant did not request a continuance to obtain
further time to review the tape.

 This taped conversation, taken as Officer Collins was beginning to investigate the two Riley
households, is neither exculpatory nor material. R.M. admits to having performed oral sex on a number
of males in a single day, at the direction of Paul, Jr. The conversation is consistent with testimony given at
trial and contains no impeachment material. There is no reasonable probability that the outcome of the
proceeding would have been different had the tape been disclosed earlier. Indeed the tape contained more
incriminating evidence that Paul, Jr. had made R.M. sexually available to his grandfather, as well as to his
brothers and his father. Viewing the tape in the context of the entire record, we hold that the trial court did
not abuse its discretion in denying appellant's motion for a mistrial based on undisclosed evidence. We
overrule points of error five, six, and seven.

 We likewise overrule the related point of error four, in which Paul, Sr. complains that the
trial court erred in failing to grant him a recess to review Officer Collins' affidavit related to this interview. 
The granting of a recess rests in the sound discretion of the trial court. Williams v. State, 481 S.W.2d
119, 123 (Tex. Crim. App. 1972). Here, the trial court afforded defense counsel an opportunity to review
the officer's notes in court; furthermore, as counsel did not timely request a recess, nothing is preserved
for review. See Tex. R. App. P. 52(a). Even had the trial court overruled such a request, it would not have
constituted reversible error in this case. The record reflects that trial counsel read the affidavit and
thoroughly cross-examined the officer about the interview. The trial court did not abuse its discretion in
denying a recess. Tutt v. State, 940 S.W.2d 114, 122 (Tex. App.--Tyler 1997, pet. ref'd) (trial court
did not abuse its discretion by denying recess when it afforded counsel ample opportunity to review notes
in court and present effective cross-examination). The videotaped testimony in State's Exhibit No. 2 was
similar to the evidence presented at trial: Whatever the number of sexual contacts discussed, R.M. insisted
in the interview, as she did at trial, that she performed these activities with others at the behest of Paul, Jr. 
We overrule the fourth point of error. 


Promiscuous Conduct Before the Age of Fourteen


 In point of error eight, appellant argues that the trial court erred by excluding evidence of
R.M's sexual conduct before she turned fourteen. Relying on May v. State, 903 S.W.2d 792 (Tex.
App.--Dallas 1995), rev'd, 919 S.W.2d 422 (Tex. Crim. App. 1996), the trial court ruled that no such
evidence would be admitted. In May the court of appeals reasoned that because a child younger than
fourteen years cannot legally consent to sexual acts, promiscuous conduct is not a defense for sexual assault
of a child under fourteen and such acts may not be admitted in evidence to establish the defense even when
the child was over fourteen at the time of the assault. See id. at 794. The court of criminal appeals has
since reversed May, holding that the defense of promiscuous conduct does not concern legal consent but
ordinary voluntariness; therefore, if the child was fourteen at the time of the offense, acts of promiscuous
conduct committed before age fourteen are admissible to establish the defense. May, 919 S.W.2d at 424. 
Although such evidence would now be admissible, appellant made no offer of proof of any sexual activities
pre-dating R.M.'s fourteenth birthday by bill of exception or otherwise; therefore, nothing is preserved for
our review. Golden v. State, 762 S.W.2d 630, 631 (Tex. App.--Texarkana 1988, pet. ref'd); see Tex.
R App. P. 52(b). Furthermore, this case can be distinguished from Johnson, 933 S.W.2d at 203, in which
the trial court heard evidence of the complainant's promiscuous behavior outside the presence of the jury
but refused to present the defense to the jury. This jury heard evidence from Paul, Jr., and David Riley,
as well as from R.M., regarding her numerous sexual activities; it was properly charged to consider this
conduct in its deliberations but rejected the defense. The improperly excluded evidence, if any existed,
would have been cumulative of other evidence of R.M.'s numerous sexual activities with a variety of
partners. We overrule point of error eight. 


Extraneous Offenses


 In points of error nine, ten, eleven, and twelve, appellant contends that it was error for the
trial court to admit evidence of extraneous offenses committed by his children. He insists that the evidence
of solicitation of prostitution by Paul, Jr. and of sexual exploitation by each of his sons was evidence of bad
acts admitted in violation of Texas Rule of Criminal Evidence 404(a), (b). Paul, Sr. argues that there is
nothing to connect his sons' offenses to him except to slander his character generally: He must be guilty
of this offense because his sons are bad, or because he is a bad father. We disagree. To be admissible
for some purpose other than to prove that he acted as a "bad guy," evidence of other offenses must have
some relevance to an issue in the case, and must fit within some exception to Rule 404(b). Mayes v. State,
816 S.W.2d 79, 84-87 (Tex. Crim. App. 1991). Paul, Sr. put the promiscuous conduct of R.M. in issue
by raising it as a defense. The State was entitled to explain that R.M. committed a variety of sexual
activities with a variety of partners solely because of Paul, Jr.'s domination and not of her own free will. 
To show this, the State offered evidence that Paul, Jr. had exploited R. M. to serve as a virtual prostitute
for the entire Riley family. The State argued that this evidence was admissible as part of the context of the
charged offense. See Lockhart v. State, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992), cert. denied,
114 S.Ct. 146 (1993) (evidence of extraneous offense indivisibly connected to the charged offense may
be admissible to explain the context of the offense). The jury heard that R.M. entered the bedroom to
perform oral sex with Paul, Sr.; it was entitled to consider the full context of the parties' behavior: that
Paul, Jr. induced R.M. to perform this act with his father against her will, that he paid her for this act and
many other sexual acts, and that this was part of his established pattern of manipulating R.M. to perform
sexual acts for his family and friends. The jury needed this evidence to properly evaluate the asserted
defense. Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (necessity is one purpose for
which contextual evidence is admissible under Rule 404(b) when it is indivisibly connected to the charged
offense). We hold that evidence of Paul, Jr.'s control and influence over R.M. in the Riley households was
indivisibly connected to the charged offense and was admissible to rebut the promiscuity defense asserted
by Paul, Sr. Appellant's assertion that how R.M. became a prostitute is not relevant is merely the flip side
of his argument that she was promiscuous as a matter of law. We again reject that argument and hold that
once Paul, Sr. raised his defense, the jury was entitled to hear evidence of the context in which R.M.
performed sexual activities with members of the Riley family, including the charged offense with Paul, Sr. 
The jury was free to accept or disregard the testimony regarding Paul, Jr.'s influence and exploitation, but
the evidence was relevant to its consideration of the promiscuity defense. Nor was the probative value of
the evidence outweighed by any danger of unfair prejudice in violation of Texas Rule of Criminal Evidence
403. Once Paul, Sr. raised the defense of R.M.'s promiscuous conduct, the trial court did not abuse its
discretion by admitting evidence of the actions of Paul, Sr.'s sons in promoting or controlling R.M.'s sexual
activities. We overrule points of error nine, ten, eleven, and twelve.


Jury Argument


 In his final point of error, Paul, Sr. complains that the State's closing argument improperly
asked the jury to punish him for the sins of his children. He refers to the prosecutor's following comments:


Paul Riley, Jr. created the R.M. that existed on August 4th by grooming her. He started
her off offering her money for photographs, offering her drugs. . . . She was troubled
enough to fall into this pitfall, and he took full advantage of it, and he got her to the point
where she would do what she was told. Blow jobs for so and so, twenty bucks, go do it,
and she would do it. Birthday present for daddy, thirty-five bucks, go do it, and she did
it. Is that consensual? Is that consensual when you are doing something where you have
given up your free will. It is unfair that they are allowed to create the R.M. that existed on
August 4th, 1993 . . . and then hide behind the same behavior that they make. 



 Appellant objected that the other family members were not on trial and the trial court
sustained the objection. Counsel did not ask the trial court to instruct the jury to disregard the statement
and did not move for a mistrial due to the alleged improper argument. The State then continued:


It is unfair that Paul Alan Riley, Sr. takes advantage of behavior that is generated by
relatives of his in a particular child, to hide behind the law and say, well, okay, I'm not
really guilty because of things that my son encouraged her to participate in, paid her to
participate in.



Appellant raised no objection to this continued argument. 

 In order to constitute reversible error, the jury argument must be extreme or manifestly
improper, or inject new and harmful facts into evidence. McKay v. State, 707 S.W.2d 23, 36 (Tex. Crim.
App. 1985). In light of the entire record, including the evidence of Paul, Jr.'s role in controlling R.M.'s
sexual conduct with his family members, the prosecutor's comments were not extreme or manifestly
improper. Unfairness, if any, could have been cured by an instruction to the jury, had one been requested. 
Furthermore, the jury subsequently heard, without objection, argument similar to that complained of. We
overrule the thirteenth point of error. 


Conclusion


 We reject appellant's contention that the trial court should have granted an instructed
verdict because R.M.'s conduct was promiscuous as a matter of law. The trial court correctly submitted
the promiscuity defense to the jury for its determination. Finding no merit in the other points of error
asserted, we affirm the trial court's judgment of conviction. 



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: July 3, 1997

Publish
1. Act of June 19, 1983, 68th Leg., R.S, ch. 977, § 3, 1983 Tex. Gen. Laws 5311, 5314 (Tex. Penal
Code Ann. § 22.011(d)(1)). In 1993, the legislature eliminated the promiscuity defense for sexual assault
offenses occurring after September 1, 1994.
2. Act of May 29, 1993, 73d Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3616 (amended
1995) (current version at Tex. Penal Code Ann. § 22.011 (West 1994 & Supp. 1997).
3. This tape was not introduced into evidence and was included in the record only for purposes of this
appeal. 



TRONG>Jury Argument


 In his final point of error, Paul, Sr. complains that the State's closing argument improperly
asked the jury to punish him for the sins of his children. He refers to the prosecutor's following comments: