COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-317-CR

 

 

RODNEY ALLEN MCGLOTHLIN                                               APPELLANT

A/K/A
RODNEY A. MCGLOTHLIN                                                            

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 372ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

                                              ------------

A jury convicted Appellant Rodney Allen
McGlothlin of two counts of sexual assault of a child (Counts One and Two) and
one count of indecency with a child (Count Three), all charged in a single
indictment.  The trial court sentenced
Appellant to fifteen years= and ten
years=
confinement respectively on the sexual assault convictions and five years=
confinement for the indecency with a child conviction, with the three sentences
to be served consecutively.








In twelve points, Appellant challenges the legal
and factual sufficiency of the evidence, argues violations of his Sixth
Amendment right to confrontation and of Texas Rules of Evidence 107 and 612,
raises double jeopardy questions, and challenges the propriety of a portion of
the juror questionnaire.  Because the
evidence is legally insufficient to support the conviction for indecency with a
child, we reverse the judgment and enter an acquittal as to that count.  We affirm the judgment as to the two
convictions of sexual assault of a child.

Background Facts

Appellant was an associate pastor at Grace
Worship Center in Cleburne, Texas, a church that he had started with his
brother.  He also had a business painting
apartments.  








Appellant and his wife Samantha met the
complainant, H.S., at another church in August 2001, when she was
fourteen.  H.S. lived with her aunt at
the time.  Her aunt accused H.S. of
molesting one of her younger cousins; H.S. was ultimately adjudicated delinquent
for committing injury to a child and placed on probation.  In November 2001, H.S. began living with
Appellant and his wife.  The McGlothlins
homeschooled H.S. and became her legal guardians.         In
January 2002, when H.S. was fifteen, she began painting apartments with
Appellant.  Another man, Roosevelt
Thomas, worked with them.  H.S. testified
that from August or September until November 2002, Appellant had sex with her
on a number of occasions.  The last
incident occurred on November 8, 2002. 
Appellant and Thomas took H.S. to a motel, where both men had sex with
her.  

As part of her probation, H.S. had been ordered
to attend weekly counseling sessions.  At
her session on November 12, 2002, H.S. told counselor Therese Fleming about the
sexual activity with Appellant and showed her a Ahickey@ on her
left breast.  Fleming and H.S. then told
Samantha, and Fleming reported the abuse to the police.  

H.S. was placed at Buckner Children=s
Assessment Center in Dallas and was given a rape examination.  The doctor found a condom with Thomas=s DNA
lodged inside H.S.=s vagina.  

Appellant was tried on two counts of sexual
assault of a child under seventeen by contact and one count of indecency with a
child by sexual contact.  At trial,
Samantha testified that Appellant had admitted to her that H.S.=s
allegations were true, although initially Samantha told no one about his
admissions.  In July 2003, after becoming
afraid that Appellant would harm her or others, she told the police.  

Sufficiency of the
Evidence Regarding Count Three of
the Indictment








In his
first two points, Appellant argues that the evidence is legally and factually
insufficient to support his conviction for indecency with a child as alleged in
Count Three of the indictment.  The State
candidly agrees.  As both the State and
Appellant point out, the State elected to seek a conviction based on Appellant=s
conduct on November 8, 2002, at the Great Western Inn.  The State concedes that the evidence does not
prove beyond a reasonable doubt that Appellant touched H.S.=s
breasts during the episode that occurred at the Great Western Inn on that
date.  Accordingly, we sustain Appellant=s first
two points, reverse the judgment of conviction for indecency with a child as
alleged in Count Three of the indictment, and enter an acquittal on that count.

We shall
address the next point with regard to the only live counts, Counts One and Two.[1]


Double Jeopardy

In his
tenth point, Appellant argues that the trial court=s
judgments of conviction for Counts One and Two, occurring within a single
episode or event, constitute double jeopardy. 
As both the State and Appellant agree, the State elected to prosecute
Appellant for the offense that occurred on November 8, 2002, at the Great
Western Inn Motel.  On that date in that
place, there is evidence that Appellant had H.S. perform oral sex on him and
that he had vaginal intercourse with her.








Section
22.011 of the penal code provides that a person commits an offense if he
intentionally or knowingly:

(A) causes the
penetration of the anus or sexual organ of a child by any means;

 

(B) causes the
penetration of the mouth of a child by the sexual organ of the actor;

 

(C) causes the sexual
organ of a child to contact or penetrate the mouth, anus, or sexual organ of
another person, including the actor; [or]

 

. . .  

 

(E) causes the mouth of a
child to contact the anus or sexual organ of another person, including the
actor.[2]

 








Count
One of the indictment provides that Appellant Adid
intentionally or knowingly cause the sexual organ of [H.S.], a child younger
than 17 years of age who was not the spouse of [Appellant] to contact the
sexual organ of [Appellant].@  Count Two provides that Appellant Adid
intentionally or knowingly cause the mouth of [H.S.], a child younger than 17
years of age who was not the spouse of [Appellant] to contact the sexual organ
of [Appellant].@ 
Appellant argues that the convictions of sexual assault by causing H.S.=s sexual
organ to contact his sexual organ and sexual assault by causing H.S.=s mouth
to contact his sexual organ, both occurring within the same criminal episode,
constitute two convictions and two punishments for a single offense, sexual
assault occurring at the motel on November 8, 2002.  








In Vick
v. State, the Texas Court of Criminal Appeals held that double jeopardy
protections do not preclude prosecution for aggravated sexual assault of a
child by causing the child=s sexual
organ to contact the defendant=s mouth
and, separately, prosecution for aggravated sexual assault of a child by
penetrating the child=s sexual organ with the
defendant=s sexual organ during the same
criminal transaction.[3]  The Vick court explained that when a
statute prohibits disjunctively separate acts of sexually assaultive conduct, Athis
specificity reflects the legislature=s intent
to separately and distinctly criminalize any act which constitutes the
proscribed conduct.  An offense is
complete when a person commits any one of the proscribed acts.@[4]  Consequently, the Vick court concluded
that the legislature intended that each separately described act Aconstituted
a separate and distinct statutory offense.@[5]  The Vick court held that the Blockburger
test does not apply.[6]  It is only necessary that the State plead the
separate manners of committing the offense in separate counts rather than
pleading alternative manners and means in separate paragraphs.[7]

Appellant
relies on Patterson v. State for the proposition that the legislature
never intended to authorize Astop-action@
prosecution; that is, the legislature did not intend to prosecute for every
action in furtherance of a greater offense.[8]  Thus, Appellant contends, the legislature did
not intend to permit prosecution for exposure and sexual contact and
penetration, all single steps in the completed offense of sexual assault by
penetration.[9]  The Patterson court specifically
stated,








Just as a conviction for
a completed offense bars prosecution for an attempt to commit the same offense,
a conviction for an offense set out in section 3.03 bars conviction for conduct
that, on the facts of the case, is demonstrably part of the commission of the
greater offense.  For example, indecency
by genital exposure of oneself in the course of manual penetration of another
are separate offenses, while penile contact with mouth, genitals, or anus in
the course of penile penetration will be subsumed.[10]

 

The
emphasized language in Patterson seems to conflict directly with the
language in Vick.

H.S.
testified that on the way to the hotel, they stopped at a convenience store,
and Thomas got out to buy condoms.  She
did not remember the brand, but she did Aknow
that they were flavored and assorted colors.@  When they got into the hotel, she began to
undress herself.  Appellant had sex with
her first, so he began to undress himself. 
H.S. testified that

they bought the condoms
so that C and they=re assorted flavors and
colors, so that way I can give oral sex. 
So [Appellant] put a condom on and I began to give him oral sex.

 

. . . .

 

 I gave [Appellant] oral sex, and soon after,
he began to have sex with me.  He
inserted his penis into my vagina at that point.

 

.
. . . 

[Appellant] finished
having sex with me from behind after he inserted his penis into my vagina and
then Roosevelt got behind me and inserted his penis into my vagina.

 








The
facts before us show contact between H.S.=s mouth
and Appellant=s sexual organ, alleged in Count
Two of the indictment, and actual penetration of H.S.=s sexual
organ with Appellant=s sexual organ.  Yet the State chose to plead the penetration
as contact between H.S.=s sexual organ and that of
Appellant in Count One.

Under
the reasoning of Patterson, had the State pled penetration of H.S.=s sexual
organ by Appellant=s sexual organ, and contact
between her sexual organ and his genitals, the case would fall squarely within
the parameters of Patterson, and the genital contact would have been
subsumed in the genital penetration.  But
that is not what happened here.  In this
case, the State pled genital contact and oral-genital contact.  The Texas Court of Criminal Appeals has
specifically addressed the issue now before this court, explaining,

In defining sexual
contact, the Legislature placed limitations on the prohibited conduct by
criminalizing only three specific types of acts.  A person can engage in sexual contact by
touching the anus, by touching the breast, or by touching the genitals with the
requisite intent.  Each one of these acts
represents a different offense.  Any
alternative mode of commission relates to how the touching was effectuated, not
where the touching occurred.

 








This
determination comports with our decision in Vick v. State, in which we
held that aggravated sexual assault, as defined in  Section 22.021(a)(1)(B), Penal Code, is a
conduct‑oriented offense that proscribes separate and distinct acts of
commission.  There, we were confronted
with the issue of whether the prohibition against double jeopardy precludes
multiple prosecutions under  Penal Code
Section 22.021(a)(1)(B) where the proscribed conduct occurred during the same
transaction.  Looking at the statutory
text of subsections (i)‑(iv) in 
Section 22.021(a)(1)(B), we recognized that (i) and (ii) "concern
penetration of the child, one focusing on the genital area, and the other on
the mouth[,]" while (iii) and (iv) concern "penetration and contact
of another in a sexual fashion, by the sexual organ or anus of the
child."  We also observed that
subsections (i)‑(iv) are separated by "the conjunctive 'or' to distinguish
and separate different conduct[.]" 
We then concluded:   

 

The statute criminalizes
many types of sexually assaultive conduct with a child.  Yet, each section usually entails different
and separate acts to commit the various, prohibited conduct.  This specificity reflects the legislature's
intent to separately and distinctly criminalize any act which constitutes the
proscribed conduct.  An offense is
complete when a person commits any one of the proscribed acts. 

 

Based on this
determination, we held that "the Legislature, through the language of the
statute, has rejected grouping aggravated sexual assaults by 'transaction.'
"  We therefore concluded that the
State's subsequent prosecution of the appellee, Vick, for causing the female
sexual organ of the victim to contact appellee's mouth under subsection
(a)(1)(B)(iii) following an acquittal for the offense of causing the
penetration of the female sexual organ of the victim with appellee's sexual
organ under subsection (a)(1)(B)(i) was not barred for double jeopardy purposes
when the offenses occurred during the same transaction.[11]


 

Based on
the Texas Court of Criminal Appeals=s
explanation in Pizzo, we hold that Appellant=s
convictions based on genital contact and oral-genital contact do not violate
double jeopardy protections.  We overrule
Appellant=s tenth point.

 

 








Cross-Examination of H.S.

In his
fourth point, Appellant argues that the trial court violated rule 107 of the
Texas Rules of Evidence,[12]
the rule of optional completeness, by limiting his cross-examination of H.S.
concerning an accusation that she had perpetrated sexual offenses against her
younger cousins.  H.S. testified that she
went to live with Appellant and his family because certain allegations had been
made against her by the aunt with whom she had been living.  Appellant argues that he should have been
able to present to the jury testimony concerning the type of allegations the
aunt had made against H.S.  He argues
that because the trial court did not allow the explanation, he was unable to
put the information in proper context, leaving a false impression with the jury
that H.S. was not the kind of person who would willingly be involved in sexual
activities.








The
State points out that the trial court specifically found that the potential
prejudicial impact highly outweighed the limited probative value Ato make
that one point, particularly in lieu of the whole record.@  As the State also points out, rule 412 of the
Texas Rules of Evidence, known as the rape shield law, governs the
admissibility of a complainant=s prior
sexual conduct in a sexual assault prosecution.[13]  Rule 412 precludes evidence of specific
instances of the complainant=s past
sexual behavior except under certain limited circumstances.[14]  Because H.S. was younger than seventeen years
of age, consent is not an issue or defense in this case.[15]  Nor is promiscuity a defense under current
law.[16]








The jury
was allowed to hear evidence that in the past, H.S. had falsely claimed to have
been kidnapped at gunpoint and gang raped when in reality she and her roommate
had hitched a ride with some men in their twenties, used cocaine, and had sex
with multiple partners in a room at an automotive shop.  Additionally, several witnesses testified
that H.S. was not truthful.  Her aunt
testified that H.S. had falsely accused her sons of molesting her and had
admitted two weeks later that she had lied. 
A.H., who attended school with H.S. for a few months, testified that
H.S. had told friends that she had slept with A.H.=s
boyfriend and also testified that it was a lie. 


H.S.
admitted that she had had trouble telling the truth when she was younger and
that she had lied when living with Appellant and his family to avoid getting in
trouble, but she claimed that she was telling the truth about the accusations
against Appellant.  

Because
any possible probative value of the testimony concerning H.S.=s
sexually abusing her cousins was overwhelmingly outweighed by the prejudicial
and inflammatory nature of the testimony, the trial court did not abuse its
discretion by refusing to allow the evidence before the jury.[17]  We overrule Appellant=s fourth
point.

In his
third point, Appellant contends that the trial court violated his Sixth
Amendment right to confrontation by limiting his cross-examination of H.S.
regarding the abovementioned evidence. 
In Lopez v. State,[18]
the Texas Court of Criminal Appeals explained,








Each Confrontation Clause
issue must be weighed on a case‑by‑case basis, carefully taking
into account the defendant's right to cross‑examine and the risk factors
associated with admission of the evidence. 
In weighing whether evidence must be admitted under the Confrontation
Clause, the trial court should balance the probative value of the evidence
sought to be introduced against the risk its admission may entail.  The trial court maintains broad discretion to
impose reasonable limits on cross‑examination to avoid harassment,
prejudice, confusion of the issues, endangering the witness, and the injection
of cumulative or collateral evidence. 

 

We have previously indicated that the Confrontation Clause will
prevail if there is a conflict between it and the Rules of Evidence.  Indeed, Rule 101(c) of the Rules of Evidence
dictates that the Constitution should control if there is a conflict.  But that Rule also admonishes us that,
"where possible, inconsistency is to be removed by reasonable
construction."[19]

Given
our holding above that any possible probative value of the testimony concerning
H.S.=s
sexually abusing her cousins was overwhelmingly outweighed by its prejudicial
and inflammatory nature and given also the negative evidence about H.S. that
the jury was allowed to hear, we cannot say that in this case the trial court
abused its discretion in limiting the cross-examination.  We overrule Appellant=s third
point.

Cross-Examination of the Examining Doctor








Appellant
argues in his fifth, sixth, and seventh points that the trial court violated
his Sixth Amendment right to confrontation and rules 107 and 612 of the Texas
Rules of Evidence in limiting the cross-examination of the doctor who performed
the rape examination by refusing to allow the jury to hear information she had
gathered indicating that H.S. had committed sexual offenses against her
cousins.  

Doctor
Jayme Coffman testified at the rule 412 hearing that as part of her diagnosis
and treatment of H.S., she took a history from a CPS worker.  The history indicated that H.S. had sexually
abused her same-age cousins and that she was on probation for the sexual
offense.  Doctor Coffman testified that
the information had no impact on H.S.=s care
and treatment for the alleged sexual assault by Appellant and Thomas but that A[i]t had
to do with her overall, what all has gone on with her, what do I need to worry
about, what kind of counseling, what issues, emotional and physical, do I need
to deal with.@ 
On cross-examination, Dr. Coffman stated that the information was in the
report because it could be relevant to H.S.=s
treatment later on.  Dr. Coffman also
testified that she had reviewed the report containing that information in
preparation for her testimony at trial.

Appellant
urged the proposed cross-examination of Dr. Coffman about the allegations that
H.S. committed sexual abuse of her cousins on two theories:  (1) the evidence was admissible under the
Sixth Amendment right to cross-examination as part of the information Dr.
Coffman relied on in reaching her diagnosis, and (2) it was admissible under
rule 612 of the Texas Rules of Evidence because it was information contained in
a written report that Dr. Coffman used to refresh her memory before testifying.








When
Appellant sought to admit the evidence before the jury, the trial court refused
to admit it.  Normally, evidence provided
by a physician for purposes of treatment and diagnosis is admissible into
evidence.[20]  But rule 412 protects complainants in sexual
offense cases.[21]  Had consent been an issue, Appellant would
have a stronger argument for admissibility of the evidence.[22]  Similarly, had the sexual activity with the
cousins provided an explanation for the doctor=s
findings other than Appellant=s guilt,
the evidence would have had more probative value, and admissibility would be a
closer issue.[23]








In the
case now before this court, Doctor Coffman testified that she had found a
healed transection of H.S.=s hymen
which was not likely caused by Appellant and also a condom lodged in H.S.=s
vagina.  The condom contained hairs and
semen that were connected through DNA to Thomas.  Evidence that H.S. had been accused of
molesting her female cousins did not challenge these findings; there is no
suggestion that the sexual abuse included having the cousins penetrate H.S.=s female
sexual organ.  Additionally, because of
H.S.=s age,
consent was not an issue.[24]  

Although
the evidence Appellant sought to present before the jury could have affected
the doctor=s recommendation for H.S.=s
overall treatment, the evidence had nothing to do with the diagnosis, and the
diagnosis is the only evidence that went to the elements or proof of the
offenses alleged against Appellant. 
Consequently, any probative value of the excluded evidence was either
nonexistent or slight.  And, as we have
already held, the evidence was highly inflammatory and likely to arouse
prejudice in the jury.  Thus, for these
reasons and those articulated above in the discussion of the limitation of the
cross-examination of H.S., we hold that the trial court did not abuse its
discretion by excluding the evidence and limiting the cross-examination and
therefore that it did not violate rule 107, rule 612, or the Sixth
Amendment.  We overrule Appellant=s fifth,
sixth, and seventh points.

Cross-Examination of the Counselor








In his
eighth point, Appellant argues that he should have been able to offer evidence
to show the circumstances under which H.S. was required to attend
counseling.  H.S. made her outcry
regarding the sexual activity with Appellant and Thomas during a counseling
session with Therese Fleming, a licensed professional counselor.  Again, Appellant wanted to present to the
jury the fact that H.S. was on probation in juvenile court for a sexual
offense.  Appellant argues that by
allowing the State to present Fleming=s
testimony without allowing the proffered cross-examination, the trial court
effectively allowed the jury to take Fleming=s
testimony out of context, that there is a significant difference between a
patient=s making
an allegation of sexual abuse against another when the patient is herself a
sexual abuser as opposed to when she is not, and that rule 107 mandates that
the evidence be presented before the jury. 


The jury
was allowed to hear that H.S. had been ordered to counseling with Fleming by
Johnson County Juvenile Services.  The
jurors, therefore, were informed that H.S. had violated the law; they were
simply not informed of the exact nature of the violation.  For the reasons discussed above, the trial
court did not abuse its discretion by excluding evidence of the specific nature
of the conduct that resulted in H.S.=s
juvenile probation.  We overrule
Appellant=s eighth point.

Cross-Examination Regarding Alarm on H.S.=s
Bedroom Door








In his
ninth point, Appellant argues that the trial court erred by refusing to allow
him to cross-examine his former wife Samantha regarding the circumstances under
which an alarm had been placed on H.S.=s
bedroom door.  Outside the presence of
the jury, Samantha testified that H.S. had an alarm on her bedroom door to
ensure that she did not abuse the McGlothins=
children.  The alarm had been CPS=s
idea.  The trial court allowed
cross-examination about the alarm but not about the allegations that H.S. had
sexually molested her cousins.  Appellant
was allowed to cross-examine Samantha to establish that CPS had suggested that
the alarm be put on H.S.=s door to protect the
McGlothlins= children and to protect
Appellant from potential accusations.

Appellant
argues that the State, in its case-in-chief, elicited a large amount of
testimony from Samantha demonstrating that Appellant was very controlling and
imposed very strict rules on H.S.  The
State used the evidence to argue that Appellant was isolating and grooming her
so that he could molest her.  Appellant
argues that in light of this testimony, he should have been allowed to produce
evidence showing a different motivation for the alarm.  But Samantha testified that the alarm had
been neither her idea nor Appellant=s.  Therefore the excluded evidence was not
needed to correct a false impression that Appellant was responsible for the
alarm.








For
these reasons and those presented in the above discussions of the limited
cross-examinations of H.S., Coffman, and Fleming, and also because the evidence
Appellant sought to admit regarding the specific acts of sexual misconduct was
very prejudicial but of limited or no probative value, we hold that the trial
court did not abuse its discretion by excluding the proffered testimony.  We overrule Appellant=s ninth
point.

Jury Questionnaire

In his
eleventh and twelfth points, Appellant argues that the trial court erred by
including in the jury questionnaire the following question, ACould
you as a juror convict a person based on the testimony of the child, assuming
you believed the child?@ 
Appellant did not object to the question=s being
submitted to the jury panel, however, until after it had been submitted and
answered.  To preserve a complaint for our
review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or motion.[25]  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the complaining
party must have objected to the trial court=s refusal to rule.[26]  Because his objection was not timely,
Appellant has not preserved the points concerning the jury
questionnaire for review.  We overrule
Appellant=s eleventh and twelfth points.








 

Conclusion

We
affirm the trial court=s judgment in part and reverse
it and render judgment in part.  Because
we hold that the evidence is legally insufficient to support the conviction for
indecency with a child, we reverse the trial court=s
judgment as to Count Three and enter an acquittal on that count.  We affirm the trial court=s
judgment as to Counts One and Two, sexual assault of a child.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

 

DELIVERED:
May 29, 2008











[1]See Tex. R. App. P. 47.1.





[2]Tex. Penal Code Ann. ' 22.011(a)(2) (Vernon Supp. 2007).  The changes between the current statute and
the statute in effect at the time of the offense are not material to this
appeal.  Therefore, all citations will be
to the statute currently in force.





[3]991 S.W.2d 830, 833 (Tex. Crim. App. 1999).





[4]Id.





[5]Id.





[6]Id.





[7]Id. at 834.





[8]152 S.W.3d 88, 92 (Tex. Crim. App. 2004).





[9]See id.





[10]Id. at 92
(emphasis added).





[11]Pizzo v. State,
235 S.W.3d 711, 717B18 (Tex. Crim. App. 2007) (citations omitted).

 





[12]Tex. R. Evid. 107.





[13]Tex. R. Evid. 412; Hale v. State, 140 S.W.3d 381, 396 (Tex.
App.CFort Worth 2004, pet. ref=d).





[14]See Tex R. Evid.
412(b).





[15]See Tex. Penal Code Ann. '
22.011(a)(1), (b); Tex. R. Evid.
412(b)(2)(B).





[16]See Tex. Penal Code Ann. ' 22.011; see also Graves v. State, 994 S.W.2d
238, 245 n.6 (Tex. App.CCorpus Christi 1999, pet. ref=d,
untimely filed); Riley v. State, 953 S.W.2d 354, 357 n.1 (Tex. App.CAustin
1997, pet. ref=d).





[17]See Tex. R. Evid. 412(b)(3).





[18]18 S.W.3d 220 (Tex. Crim. App. 2000).





[19]Id. at 222B23.





[20]Tex. R. Evid. 803(4).





[21]Tex. R. Evid. 412.





[22]See Tex. R. Evid. 412(b)(2)(A).





[23]See Tex. R. Evid.
412(b)(2)(A), (3).





[24]See Tex. Penal Code Ann. '
22.011(a)(1), (b); Tex. R. Evid.
412(b)(2)(B).





[25]Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249,
265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).





[26]Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334,
341 (Tex. Crim. App. 2004).