

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-05-317-CR**

RODNEY ALLEN MCGLOTHLIN                    APPELLANT
A/K/A RODNEY A. MCGLOTHLIN

V.

THE STATE OF TEXAS                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION
------------

A jury convicted Appellant Rodney Allen McGlothlin of two counts of sexual assault of a child (Counts One and Two) and one count of indecency with a child (Count Three), all charged in a single indictment. The trial court sentenced Appellant to fifteen years' and ten years' confinement respectively on the sexual assault convictions and five years' confinement for the indecency with a child conviction, with the three sentences to be served consecutively.

In twelve points, Appellant challenges the legal and factual sufficiency of the evidence, argues violations of his Sixth Amendment right to confrontation and of Texas Rules of Evidence 107 and 612, raises double jeopardy questions, and challenges the propriety of a portion of the juror questionnaire. Because the evidence is legally insufficient to support the conviction for indecency with a child, we reverse the judgment and enter an acquittal as to that count. We affirm the judgment as to the two convictions of sexual assault of a child.

## BACKGROUND FACTS

Appellant was an associate pastor at Grace Worship Center in Cleburne, Texas, a church that he had started with his brother. He also had a business painting apartments.

Appellant and his wife Samantha met the complainant, H.S., at another church in August 2001, when she was fourteen. H.S. lived with her aunt at the time. Her aunt accused H.S. of molesting one of her younger cousins; H.S. was ultimately adjudicated delinquent for committing injury to a child and placed on probation. In November 2001, H.S. began living with Appellant and his wife. The McGlothlins homeschooled H.S. and became her legal guardians.

In January 2002, when H.S. was fifteen, she began painting apartments with Appellant. Another man, Roosevelt Thomas, worked with them. H.S. testified that from August or September until November 2002, Appellant had

sex with her on a number of occasions. The last incident occurred on November 8, 2002. Appellant and Thomas took H.S. to a motel, where both men had sex with her.

As part of her probation, H.S. had been ordered to attend weekly counseling sessions. At her session on November 12, 2002, H.S. told counselor Therese Fleming about the sexual activity with Appellant and showed her a "hickey" on her left breast. Fleming and H.S. then told Samantha, and Fleming reported the abuse to the police.

H.S. was placed at Buckner Children's Assessment Center in Dallas and was given a rape examination. The doctor found a condom with Thomas's DNA lodged inside H.S.'s vagina.

Appellant was tried on two counts of sexual assault of a child under seventeen by contact and one count of indecency with a child by sexual contact. At trial, Samantha testified that Appellant had admitted to her that H.S.'s allegations were true, although initially Samantha told no one about his admissions. In July 2003, after becoming afraid that Appellant would harm her or others, she told the police.

### SUFFICIENCY OF THE EVIDENCE REGARDING COUNT THREE OF THE INDICTMENT

In his first two points, Appellant argues that the evidence is legally and factually insufficient to support his conviction for indecency with a child as

3

alleged in Count Three of the indictment. The State candidly agrees. As both the State and Appellant point out, the State elected to seek a conviction based on Appellant's conduct on November 8, 2002, at the Great Western Inn. The State concedes that the evidence does not prove beyond a reasonable doubt that Appellant touched H.S.'s breasts during the episode that occurred at the Great Western Inn on that date. Accordingly, we sustain Appellant's first two points, reverse the judgment of conviction for indecency with a child as alleged in Count Three of the indictment, and enter an acquittal on that count.

We shall address the next point with regard to the only live counts, Counts One and Two.[1]

### DOUBLE JEOPARDY

In his tenth point, Appellant argues that the trial court's judgments of conviction for Counts One and Two, occurring within a single episode or event, constitute double jeopardy. As both the State and Appellant agree, the State elected to prosecute Appellant for the offense that occurred on November 8, 2002, at the Great Western Inn Motel. On that date in that place, there is evidence that Appellant had H.S. perform oral sex on him and that he had vaginal intercourse with her.

---

[1] *See* TEX. R. APP. P. 47.1.

4

Section 22.011 of the penal code provides that a person commits an offense if he intentionally or knowingly:

(A) causes the penetration of the anus or sexual organ of a child by any means;

(B) causes the penetration of the mouth of a child by the sexual organ of the actor;

(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; [or]

. . .

(E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.[2]

Count One of the indictment provides that Appellant "did intentionally or knowingly cause the sexual organ of [H.S.], a child younger than 17 years of age who was not the spouse of [Appellant] to contact the sexual organ of [Appellant]." Count Two provides that Appellant "did intentionally or knowingly cause the mouth of [H.S.], a child younger than 17 years of age who was not the spouse of [Appellant] to contact the sexual organ of [Appellant]." Appellant argues that the convictions of sexual assault by causing H.S.'s sexual organ to

---

[2] TEX. PENAL CODE ANN. § 22.011(a)(2) (Vernon Supp. 2007). The changes between the current statute and the statute in effect at the time of the offense are not material to this appeal. Therefore, all citations will be to the statute currently in force.

5

contact his sexual organ and sexual assault by causing H.S.'s mouth to contact his sexual organ, both occurring within the same criminal episode, constitute two convictions and two punishments for a single offense, sexual assault occurring at the motel on November 8, 2002.

In *Vick v. State*, the Texas Court of Criminal Appeals held that double jeopardy protections do not preclude prosecution for aggravated sexual assault of a child by causing the child's sexual organ to contact the defendant's mouth and, separately, prosecution for aggravated sexual assault of a child by penetrating the child's sexual organ with the defendant's sexual organ during the same criminal transaction.[3] The *Vick* court explained that when a statute prohibits disjunctively separate acts of sexually assaultive conduct, "this specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts."[4] Consequently, the *Vick* court concluded that the legislature intended that each separately described act "constituted a separate and distinct statutory offense."[5] The *Vick*

---

[3] 991 S.W.2d 830, 833 (Tex. Crim. App. 1999).

[4] *Id*.

[5] *Id.*

6

court held that the *Blockburger* test does not apply.[6] It is only necessary that the State plead the separate manners of committing the offense in separate counts rather than pleading alternative manners and means in separate paragraphs.[7]

Appellant relies on *Patterson v. State* for the proposition that the legislature never intended to authorize "stop-action" prosecution; that is, the legislature did not intend to prosecute for every action in furtherance of a greater offense.[8] Thus, Appellant contends, the legislature did not intend to permit prosecution for exposure and sexual contact and penetration, all single steps in the completed offense of sexual assault by penetration.[9] The *Patterson* court specifically stated,

> Just as a conviction for a completed offense bars prosecution for an attempt to commit the same offense, a conviction for an offense set out in section 3.03 bars conviction for conduct that, on the facts of the case, is demonstrably part of the commission of the greater offense. For example, indecency by genital exposure of oneself in the course of manual penetration of another are separate offenses, *while penile contact with mouth, genitals, or anus in the*

---

[6] *Id.*

[7] *Id*. at 834.

[8] 152 S.W.3d 88, 92 (Tex. Crim. App. 2004).

[9] *See id.*

7

*course of penile penetration will be subsumed.*[10]

The emphasized language in *Patterson* seems to conflict directly with the language in *Vick*.

H.S. testified that on the way to the hotel, they stopped at a convenience store, and Thomas got out to buy condoms. She did not remember the brand, but she did "know that they were flavored and assorted colors." When they got into the hotel, she began to undress herself. Appellant had sex with her first, so he began to undress himself. H.S. testified that

> they bought the condoms so that — and they're assorted flavors and colors, so that way I can give oral sex. So [Appellant] put a condom on and I began to give him oral sex.
>
> . . . .
>
> I gave [Appellant] oral sex, and soon after, he began to have sex with me. He inserted his penis into my vagina at that point.
>
> . . . .
>
> [Appellant] finished having sex with me from behind after he inserted his penis into my vagina and then Roosevelt got behind me and inserted his penis into my vagina.

The facts before us show contact between H.S.'s mouth and Appellant's sexual organ, alleged in Count Two of the indictment, and actual penetration of H.S.'s sexual organ with Appellant's sexual organ. Yet the State chose to plead the

---

[10] *Id.* at 92 (emphasis added).

8

penetration as contact between H.S.'s sexual organ and that of Appellant in Count One.

Under the reasoning of *Patterson*, had the State pled penetration of H.S.'s sexual organ by Appellant's sexual organ, and contact between her sexual organ and his genitals, the case would fall squarely within the parameters of *Patterson*, and the genital contact would have been subsumed in the genital penetration. But that is not what happened here. In this case, the State pled genital contact and oral-genital contact. The Texas Court of Criminal Appeals has specifically addressed the issue now before this court, explaining,

> In defining sexual contact, the Legislature placed limitations on the prohibited conduct by criminalizing only three specific types of acts. A person can engage in sexual contact by touching the anus, by touching the breast, or by touching the genitals with the requisite intent. Each one of these acts represents a different offense. Any alternative mode of commission relates to how the touching was effectuated, not where the touching occurred.
>
> This determination comports with our decision in *Vick v. State*, in which we held that aggravated sexual assault, as defined in Section 22.021(a)(1)(B), Penal Code, is a conduct-oriented offense that proscribes separate and distinct acts of commission. There, we were confronted with the issue of whether the prohibition against double jeopardy precludes multiple prosecutions under Penal Code Section 22.021(a)(1)(B) where the proscribed conduct occurred during the same transaction. Looking at the statutory text of subsections (i)-(iv) in Section 22.021(a)(1)(B), we recognized that (i) and (ii) "concern penetration of the child, one focusing on the genital area, and the other on the mouth[,]" while (iii) and (iv) concern "penetration and contact of another in a sexual fashion, by the sexual organ or anus of the child." We also

9

observed that subsections (i)-(iv) are separated by "the conjunctive 'or' to distinguish and separate different conduct[.]" We then concluded:

> The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts.

> Based on this determination, we held that "the Legislature, through the language of the statute, has rejected grouping aggravated sexual assaults by 'transaction.' " We therefore concluded that the State's subsequent prosecution of the appellee, Vick, for causing the female sexual organ of the victim to contact appellee's mouth under subsection (a)(1)(B)(iii) following an acquittal for the offense of causing the penetration of the female sexual organ of the victim with appellee's sexual organ under subsection (a)(1)(B)(i) was not barred for double jeopardy purposes when the offenses occurred during the same transaction.[11]

Based on the Texas Court of Criminal Appeals's explanation in *Pizzo*, we hold that Appellant's convictions based on genital contact and oral-genital contact do not violate double jeopardy protections. We overrule Appellant's tenth point.

---

[11] *Pizzo v. State*, 235 S.W.3d 711, 717–18 (Tex. Crim. App. 2007) (citations omitted).

## CROSS-EXAMINATION OF H.S.

In his fourth point, Appellant argues that the trial court violated rule 107 of the Texas Rules of Evidence,[12] the rule of optional completeness, by limiting his cross-examination of H.S. concerning an accusation that she had perpetrated sexual offenses against her younger cousins. H.S. testified that she went to live with Appellant and his family because certain allegations had been made against her by the aunt with whom she had been living. Appellant argues that he should have been able to present to the jury testimony concerning the type of allegations the aunt had made against H.S. He argues that because the trial court did not allow the explanation, he was unable to put the information in proper context, leaving a false impression with the jury that H.S. was not the kind of person who would willingly be involved in sexual activities.

The State points out that the trial court specifically found that the potential prejudicial impact highly outweighed the limited probative value "to make that one point, particularly in lieu of the whole record." As the State also points out, rule 412 of the Texas Rules of Evidence, known as the rape shield law, governs the admissibility of a complainant's prior sexual conduct in a

---

[12] TEX. R. EVID. 107.

sexual assault prosecution.[13] Rule 412 precludes evidence of specific instances of the complainant's past sexual behavior except under certain limited circumstances.[14] Because H.S. was younger than seventeen years of age, consent is not an issue or defense in this case.[15] Nor is promiscuity a defense under current law.[16]

The jury was allowed to hear evidence that in the past, H.S. had falsely claimed to have been kidnapped at gunpoint and gang raped when in reality she and her roommate had hitched a ride with some men in their twenties, used cocaine, and had sex with multiple partners in a room at an automotive shop. Additionally, several witnesses testified that H.S. was not truthful. Her aunt testified that H.S. had falsely accused her sons of molesting her and had admitted two weeks later that she had lied. A.H., who attended school with H.S. for a few months, testified that H.S. had told friends that she had slept

---

[13] TEX. R. EVID. 412; *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd).

[14] *See* TEX R. EVID. 412(b).

[15] *See* TEX. PENAL CODE ANN. § 22.011(a)(1), (b); TEX. R. EVID. 412(b)(2)(B).

[16] *See* TEX. PENAL CODE ANN. § 22.011; *see also Graves v. State*, 994 S.W.2d 238, 245 n.6 (Tex. App.—Corpus Christi 1999, pet. ref'd, untimely filed); *Riley v. State*, 953 S.W.2d 354, 357 n.1 (Tex. App.—Austin 1997, pet. ref'd).

with A.H.'s boyfriend and also testified that it was a lie.

H.S. admitted that she had had trouble telling the truth when she was younger and that she had lied when living with Appellant and his family to avoid getting in trouble, but she claimed that she was telling the truth about the accusations against Appellant.

Because any possible probative value of the testimony concerning H.S.'s sexually abusing her cousins was overwhelmingly outweighed by the prejudicial and inflammatory nature of the testimony, the trial court did not abuse its discretion by refusing to allow the evidence before the jury.[17] We overrule Appellant's fourth point.

In his third point, Appellant contends that the trial court violated his Sixth Amendment right to confrontation by limiting his cross-examination of H.S. regarding the abovementioned evidence. In *Lopez v. State*,[18] the Texas Court of Criminal Appeals explained,

> Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence. In weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be

---

[17] *See* TEX. R. EVID. 412(b)(3).

[18] 18 S.W.3d 220 (Tex. Crim. App. 2000).

13

introduced against the risk its admission may entail. The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence.

We have previously indicated that the Confrontation Clause will prevail if there is a conflict between it and the Rules of Evidence. Indeed, Rule 101(c) of the Rules of Evidence dictates that the Constitution should control if there is a conflict. But that Rule also admonishes us that, "where possible, inconsistency is to be removed by reasonable construction."[19]

Given our holding above that any possible probative value of the testimony concerning H.S.'s sexually abusing her cousins was overwhelmingly outweighed by its prejudicial and inflammatory nature and given also the negative evidence about H.S. that the jury was allowed to hear, we cannot say that in this case the trial court abused its discretion in limiting the cross-examination. We overrule Appellant's third point.

### CROSS-EXAMINATION OF THE EXAMINING DOCTOR

Appellant argues in his fifth, sixth, and seventh points that the trial court violated his Sixth Amendment right to confrontation and rules 107 and 612 of the Texas Rules of Evidence in limiting the cross-examination of the doctor who performed the rape examination by refusing to allow the jury to hear information she had gathered indicating that H.S. had committed sexual offenses against

---

[19] *Id.* at 222–23.

her cousins.

Doctor Jayme Coffman testified at the rule 412 hearing that as part of her diagnosis and treatment of H.S., she took a history from a CPS worker. The history indicated that H.S. had sexually abused her same-age cousins and that she was on probation for the sexual offense. Doctor Coffman testified that the information had no impact on H.S.'s care and treatment for the alleged sexual assault by Appellant and Thomas but that "[i]t had to do with her overall, what all has gone on with her, what do I need to worry about, what kind of counseling, what issues, emotional and physical, do I need to deal with." On cross-examination, Dr. Coffman stated that the information was in the report because it could be relevant to H.S.'s treatment later on. Dr. Coffman also testified that she had reviewed the report containing that information in preparation for her testimony at trial.

Appellant urged the proposed cross-examination of Dr. Coffman about the allegations that H.S. committed sexual abuse of her cousins on two theories: (1) the evidence was admissible under the Sixth Amendment right to cross-examination as part of the information Dr. Coffman relied on in reaching her diagnosis, and (2) it was admissible under rule 612 of the Texas Rules of Evidence because it was information contained in a written report that Dr. Coffman used to refresh her memory before testifying.

15

When Appellant sought to admit the evidence before the jury, the trial court refused to admit it. Normally, evidence provided by a physician for purposes of treatment and diagnosis is admissible into evidence.[20] But rule 412 protects complainants in sexual offense cases.[21] Had consent been an issue, Appellant would have a stronger argument for admissibility of the evidence.[22] Similarly, had the sexual activity with the cousins provided an explanation for the doctor's findings other than Appellant's guilt, the evidence would have had more probative value, and admissibility would be a closer issue.[23]

In the case now before this court, Doctor Coffman testified that she had found a healed transection of H.S.'s hymen which was not likely caused by Appellant and also a condom lodged in H.S.'s vagina. The condom contained hairs and semen that were connected through DNA to Thomas. Evidence that H.S. had been accused of molesting her female cousins did not challenge these findings; there is no suggestion that the sexual abuse included having the cousins penetrate H.S.'s female sexual organ. Additionally, because of H.S.'s

---

[20] TEX. R. EVID. 803(4).

[21] TEX. R. EVID. 412.

[22] *See* TEX. R. EVID. 412(b)(2)(A).

[23] *See* TEX. R. EVID. 412(b)(2)(A), (3).

age, consent was not an issue.[24]

Although the evidence Appellant sought to present before the jury could have affected the doctor's recommendation for H.S.'s overall treatment, the evidence had nothing to do with the diagnosis, and the diagnosis is the only evidence that went to the elements or proof of the offenses alleged against Appellant.  Consequently, any probative value of the excluded evidence was either nonexistent or slight.  And, as we have already held, the evidence was highly inflammatory and likely to arouse prejudice in the jury.  Thus, for these reasons and those articulated above in the discussion of the limitation of the cross-examination of H.S., we hold that the trial court did not abuse its discretion by excluding the evidence and limiting the cross-examination and therefore that it did not violate rule 107, rule 612, or the Sixth Amendment. We overrule Appellant's fifth, sixth, and seventh points.

### CROSS-EXAMINATION OF THE COUNSELOR

In his eighth point, Appellant argues that he should have been able to offer evidence to show the circumstances under which H.S. was required to attend counseling.  H.S. made her outcry regarding the sexual activity with Appellant and Thomas during a counseling session with Therese Fleming, a

---

[24] *See* TEX. PENAL CODE ANN. § 22.011(a)(1), (b); TEX. R. EVID. 412(b)(2)(B).

licensed professional counselor.  Again, Appellant wanted to present to the jury the fact that H.S. was on probation in juvenile court for a sexual offense.  Appellant argues that by allowing the State to present Fleming's testimony without allowing the proffered cross-examination, the trial court effectively allowed the jury to take Fleming's testimony out of context, that there is a significant difference between a patient's making an allegation of sexual abuse against another when the patient is herself a sexual abuser as opposed to when she is not, and that rule 107 mandates that the evidence be presented before the jury.

The jury was allowed to hear that H.S. had been ordered to counseling with Fleming by Johnson County Juvenile Services.  The jurors, therefore, were informed that H.S. had violated the law; they were simply not informed of the exact nature of the violation.  For the reasons discussed above, the trial court did not abuse its discretion by excluding evidence of the specific nature of the conduct that resulted in H.S.'s juvenile probation.  We overrule Appellant's eighth point.

### CROSS-EXAMINATION REGARDING ALARM ON H.S.'S BEDROOM DOOR

In his ninth point, Appellant argues that the trial court erred by refusing to allow him to cross-examine his former wife Samantha regarding the circumstances under which an alarm had been placed on H.S.'s bedroom door.

18

Outside the presence of the jury, Samantha testified that H.S. had an alarm on her bedroom door to ensure that she did not abuse the McGlothins' children. The alarm had been CPS's idea. The trial court allowed cross-examination about the alarm but not about the allegations that H.S. had sexually molested her cousins. Appellant was allowed to cross-examine Samantha to establish that CPS had suggested that the alarm be put on H.S.'s door to protect the McGlothlins' children and to protect Appellant from potential accusations.

Appellant argues that the State, in its case-in-chief, elicited a large amount of testimony from Samantha demonstrating that Appellant was very controlling and imposed very strict rules on H.S. The State used the evidence to argue that Appellant was isolating and grooming her so that he could molest her. Appellant argues that in light of this testimony, he should have been allowed to produce evidence showing a different motivation for the alarm. But Samantha testified that the alarm had been neither her idea nor Appellant's. Therefore the excluded evidence was not needed to correct a false impression that Appellant was responsible for the alarm.

For these reasons and those presented in the above discussions of the limited cross-examinations of H.S., Coffman, and Fleming, and also because the evidence Appellant sought to admit regarding the specific acts of sexual misconduct was very prejudicial but of limited or no probative value, we hold

19

that the trial court did not abuse its discretion by excluding the proffered testimony.  We overrule Appellant's ninth point.

## JURY QUESTIONNAIRE

In his eleventh and twelfth points, Appellant argues that the trial court erred by including in the jury questionnaire the following question, "Could you as a juror convict a person based on the testimony of the child, assuming you believed the child?"  Appellant did not object to the question's being submitted to the jury panel, however, until after it had been submitted and answered.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[25]  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[26]  Because his objection was not timely, Appellant has not preserved the points concerning the jury questionnaire for review.  We overrule Appellant's eleventh and twelfth points.

---

[25] TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

[26] TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

**CONCLUSION**

We affirm the trial court's judgment in part and reverse it and render judgment in part. Because we hold that the evidence is legally insufficient to support the conviction for indecency with a child, we reverse the trial court's judgment as to Count Three and enter an acquittal on that count. We affirm the trial court's judgment as to Counts One and Two, sexual assault of a child.


LEE ANN DAUPHINOT
JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

PUBLISH

DELIVERED: May 29, 2008