02-11-419-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00419-CR

 

 









 
 
 Lee
 A. Rushton
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 213th District
 Court
  
 of
 Tarrant County (1191333D)
  
 February
 28, 2013
  
 Per
 Curiam  (nfp)
  
 Dissent
 by Justice Dauphinot  (p)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

PER
CURIAM

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00419-CR

 

 


 
 
 Lee A. Rushton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 213th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
two issues, appellant Lee A. Rushton appeals his convictions for indecency with
a child by contact and aggravated sexual assault of a child.[2] 
We affirm.

Background Facts

          When
Taylor[3] was eight years old, she
and her mother moved into a three-bedroom apartment in Fort Worth.  At some
point, appellant became Taylor’s mother’s boyfriend, and he moved into the
apartment.  Taylor’s mother, who used drugs and drank too much alcohol, often
left Taylor alone with appellant.  On one of those occasions, at night, appellant
asked Taylor, who was nine years old at the time, to lie with him on a couch.  When
Taylor did so, appellant touched her legs, pulled her pajama pants and
underwear off, pulled his own pants off, touched her vagina with his hand, got
on top of her, and inserted his penis into her vagina.  Taylor felt pain and
bled from her vagina.  Appellant told Taylor to not say anything about what had
occurred, but Taylor told her mother and later told her fifteen-year-old
sister, who was living in El Paso, about what appellant had done.

          Taylor
eventually moved in with her godparents and also told them about what had
happened with appellant.  Taylor’s godparents did not immediately notify the authorities
about what Taylor had said.  Later, Taylor moved back in with her mother.

          When
Taylor was sixteen years old, her older cousin, with whom Taylor had lived for
a short time, told Child Protective Services (CPS) about Taylor’s sexual
encounter with appellant.  A CPS employee interviewed Taylor and learned about
appellant’s sexual contact with her.  Taylor later spoke with a police officer
about appellant’s crimes.  The police arrested appellant.

          Appellant’s
indictment included, among other allegations, charges of aggravated sexual
assault of a child (based on an assertion that appellant intentionally or
knowingly caused Taylor’s sexual organ to contact his own sexual organ when Taylor
was younger than fourteen years old) and indecency with a child by contact
(based on an assertion that appellant, with the intent to arouse or gratify his
sexual desire, engaged in sexual contact with Taylor by touching her vagina). 
The trial court appointed counsel to represent appellant.  Appellant chose the
trial court to assess his punishment in the event that he was convicted.

          At
trial, appellant pled not guilty.  After receiving the evidence and
deliberating for approximately twenty minutes, the jury convicted appellant of
both offenses.  The trial court assessed concurrent thirty-year sentences for each
of the offenses.[4]  Appellant brought this
appeal.

Request
for Election Between Offenses

          In
his first issue, appellant contends that the indecency with a child by contact
offense should not have been submitted to the jury because the jury charge did
not specify the manner of contact, and the jury could have therefore based its
indecency with a child by contact conviction on the same penile-to-vaginal
contact that resulted in the aggravated sexual assault conviction.  Appellant
argues that the trial court should have required the State to elect to proceed
on only one of the two counts and that the submission of both counts violated
his constitutional protection against double jeopardy.[5]

          After
both parties rested, but before the jury received its charge or the parties
made closing arguments, appellant’s counsel asked the trial court to require
the State to elect to proceed on either aggravated sexual assault or indecency
with a child by contact, stating,

Count One of this indictment alleges a sexual assault by
touching the female sexual organ with the male sexual organ of the defendant.  Count
Two was waived, so we’re now dealing with Count Three.  And Count Three also
alleges a sexual contact by touching the vagina, and it doesn’t say in what
manner.  We would submit under the [Patterson v. State[6]]
analysis by the Court of Criminal Appeals, that Count Three or Count One, the
State needs to make an election, because they can’t get a conviction off of
both the way they’ve alleged it.

          . . . .

          . . .  [Patterson] is an identical situation
to this where you have an aggravated sexual assault of a child case of a
touching of the female sexual organ, and then they had a second conviction in the
same case for indecency with a child by sexual contact by touching the female
sexual organ. 

          . . .  [Patterson] says that under the situation
we have here, it invites the jury to find one act and get two convictions,
which is a violation of double jeopardy.  That’s a position we’re advancing to the
Court because in this situation, the jury could quite well find a penetration
by the penis to the female sexual organ and convict under both counts because there’s
not a limitation under Count Three as to how the touching occurred.

In
response to appellant’s oral motion for an election, a prosecutor stated, 

Paragraph One is an allegation of aggravated sexual
assault in that the touching is genital-to-genital. . . .  Count Three is an
allegation of indecency with a child by sexual contact, and that can be -- it
can be by any means other than genital-to-genital.  The . . . victim testified
that he touched her and actually penetrated her, much less contacted her with
his penis to her female sexual organ, and she also testified that he used his
hand to touch . . . her sexual organ.

The
trial court indicated that it would rule on appellant’s motion for an election
on the next day.

          The
following morning, appellant again urged the motion, asking the court to
require the “State to elect with regards to Count One . . . and Count Three.”  The
State contended that the evidence that had been presented established two
separate offenses because the genital-to-genital contact qualified as
aggravated sexual assault and the hand-to-genital contact qualified as
indecency with a child.  The trial court denied appellant’s “motion to require
the State to elect which count [they were] going to proceed on,” and the court
submitted a jury charge on both counts.  Specifically, the charge instructed
the jury to find appellant guilty of aggravated sexual assault of a child if it
found beyond a reasonable doubt that Taylor was younger than fourteen years old
when appellant intentionally or knowingly caused her sexual organ to contact
his sexual organ, and the charge instructed the jury to find appellant guilty
of indecency with a child by contact if it found beyond a reasonable doubt that
“with intent to arouse or gratify [his] sexual desire . . ., [he] engage[d] in
sexual contact by touching [Taylor’s] vagina.”

          On
appeal, relying on Patterson, appellant argues that the trial court’s
ruling and jury charge were improper because although the jury could have found
that the indecency with a child by contact conviction was based “on the
separate act of the Appellant touching the alleged victim with his hand,” there
was a chance that the jury found appellant guilty of the indecency with a child
by contact offense for the genital to genital touching that supported the
aggravated sexual assault conviction.

          In
Patterson, the State had charged Patterson with five offenses arising
from two sexual encounters that he had with an eleven-year-old girl.  152
S.W.3d at 89.  The jury convicted Patterson of all five charges, but he alleged
that some of the convictions violated the constitutional prohibition against
double jeopardy.  Id.  Particularly, he asserted that double jeopardy
principles precluded convictions for aggravated sexual assault of a child and
indecency with a child by exposure when the exposure occurred prior to the sexual
assault.  See id.  The court of criminal appeals, although not directly
addressing double jeopardy, held that convictions could not be obtained for
both offenses, explaining in part,

While it is clear from the plain language of the various
statutes that the legislature intended harsh penalties for sexual abuse of
children, there is nothing in the language to suggest that it intended to
authorize “stop-action” prosecution. . . .

          . . .  The record in this case does not show an
occasion during the assaults when the exposure was a separate offense.  Under
the facts of these incidents, exposure was incident to and subsumed by the
aggravated sexual assault.

Id. at
92.

          While
the court of criminal appeals’s rationale in Patterson, along with the
law discussed in that opinion, prevents convictions for sexual offenses that
are incident to and subsumed by other sexual offenses, see McGlothlin v.
State, 260 S.W.3d 124, 127–28 (Tex. App.—Fort Worth 2008, pet. ref’d),
multiple convictions may be obtained for different sexual acts occurring in the
same episode when those acts are not subsumed within each other.  See id.
at 126–29; see also Vick v. State, 991 S.W.2d 830, 833 (Tex. Crim. App.
1999) (holding that convictions may be obtained both for the defendant’s penile
penetration of a child’s sexual organ and the defendant’s oral contact with a
child’s sexual organ even when those acts occur in “close temporal proximity”);
Bottenfield v. State, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002,
pet. ref’d) (“Although the two acts in T.H.’s case may have been committed
during the same occurrence, appellant’s touching of T.H.’s genitals with his
finger was a separate and distinct criminal act from contacting her sexual
organ with his penis.”), cert. denied, 539 U.S. 916 (2003); Hutchins
v. State, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref’d) (“Although
the two acts were committed in close temporal proximity, appellant’s touching
of L.M.’s genitals with his fingers was a separate and distinct act from his
penetration of her female sexual organ with his penis.”).

          Appellant
appears to recognize that his sexual contact with Taylor by his hand and by his
penis could comprise distinct offenses, but he nonetheless argues that the
State should have been required to elect between the two offenses because the
jury charge did not specify which manner of touching supported indecency with a
child by contact.  Precedent from the court of criminal appeals and our own
court, however, compels us to reach the opposite conclusion.

          In
Ochoa v. State, the State had charged Ochoa with five counts of
aggravated sexual assault occurring on five distinct dates and five counts of
indecency with a child occurring on the same dates.  982 S.W.2d 904, 905 (Tex.
Crim. App. 1998).  A jury convicted Ochoa of one count of aggravated sexual
assault and one count of indecency with a child, with each offense having
occurred on the same day.  Id.  Ochoa had complained at trial that the
State should not have been able to convict him for both offenses and had
requested the State to elect the offense upon which it would proceed, but the
trial court had overruled his objection to the submission of both offenses.  Id.
at 906–07.  In affirming a court of appeals’s reversal of Ochoa’s
conviction for indecency with a child, the court of criminal appeals stated,

[T]he [court of appeals] should have focused on whether
the evidence in this case justified the trial court in submitting
instructions that would permit the jury to convict and sentence appellant both
for committing aggravated sexual assault and for committing indecency with a
child on June 16, 1994. . . .

          In [Ochoa’s] trial, the State presented
evidence of only one sexual offense committed by [Ochoa] against C.O. on June
16, 1994.  C.O. did not testify that [Ochoa] touched her more than one time on
that day. . . .

          . . . .

          . . .  Because there was evidence of only
one offense committed by [Ochoa], . . . we hold that the State should
have elected which offense upon which it would proceed or, in the
alternative, received a submission of the offense of indecency with a child to
the jury only as a lesser-included alternative to the offense of aggravated
sexual assault.

          The State was not entitled to seek convictions
for two offenses because the evidence at trial shows that only one
offense was committed.

Id. at
907–08 (emphasis added).

          Similarly,
in Bottenfield, we considered whether a trial court had erred by denying
a defendant’s request to require the State to elect between seeking a
conviction for aggravated sexual assault or indecency with a child by contact. 
77 S.W.3d at 357.  We resolved that question based on whether the “evidence
justified the trial court in submitting instructions that would permit the
jury to convict and sentence appellant both for committing aggravated sexual
assault and for committing indecency with a child . . . [in other words], whether
the evidence show[ed] [Bottenfield] committed two separate offenses.”  Id.
at 357–58 (emphasis added).  Applying this test, we held that because
Bottenfield’s “conviction for aggravated sexual assault was not based on the
same conduct underlying his conviction for indecency, the evidence was
sufficient to show that more than one offense was committed by [him], and
submission of both aggravated sexual assault and indecency was proper.”  Id.
at 358.

          Finally,
in Hutchins, similar to the charges in this case, the State had charged
Hutchins in one count with penetrating a child’s female sexual organ with his
penis and had charged him in another count with touching the same child’s
genitals with the intent to arouse and gratify his sexual desire, without
specifying how the touching occurred.  992 S.W.2d at 631.  The child testified
that Hutchins had touched her private area with his fingers and his genitals.  Id. 
The Austin Court of Appeals held that convictions could be obtained for both offenses
without violating double jeopardy, explaining,

          If the evidence . . . showed that the only act
of sexual contact committed by appellant . . . was the contact incident to appellant’s
penetration of L.M. with his penis, or if the court’s jury charge had required
the jury to find that appellant touched L.M. with his penis, we would . . .
agree with appellant that he could not be convicted for both aggravated sexual
assault and indecency with a child by contact. See Ochoa, 982 S.W.2d at
907–08.  But neither the evidence nor the charge was so limited.  L.M.
testified that appellant touched her genitals with his fingers before
penetrating her with his penis.  The jury charge, tracking the indictment,
required the jury to find only that appellant touched L.M.’s genitals with the
requisite intent; the charge did not require a finding that appellant touched
L.M. with his penis.  Although the two acts were committed in close temporal
proximity, appellant’s touching of L.M.’s genitals with his fingers was a separate
and distinct act from his penetration of her female sexual organ with his
penis.  Because appellant has not shown that his conviction for indecency with
a child by contact was based on the same conduct underlying his conviction for
aggravated sexual assault of a child, his contention that these convictions
constitute multiple punishments for the same offense is without merit.

Id. at
633; see also Bailey v. State, No. 02-05-00394-CR, 2007 WL 79544, at *7–8
(Tex. App.—Fort Worth Jan. 11, 2007, pet. ref’d)  (mem. op., not designated for
publication) (holding that it was proper for the trial court’s charge to
include both “aggravated sexual assault of a child by penetration” and “indecency
with a child by contacting the genitals of a child” because evidence existed
that the defendant touched the victim’s genitals with both his finger and his
penis); Reyes v. State, No. 04-03-00474-CR, 2004 WL 1665906, at *3 (Tex.
App.—San Antonio July 28, 2004, no pet.) (mem. op., not designated for
publication) (holding that the “concept of mandating an election by the State”
between aggravated sexual assault and indecency with a child charges was
inapplicable because the State “ha[d] proven that there were two distinct and
separate acts”); Beltran v. State, 30 S.W.3d 532, 534 (Tex. App.—San
Antonio 2000, no pet.) (holding that submission of both aggravated sexual
assault and indecency with a child by contact to the jury was proper, even
though the indictment did not specify the manner of contacting the child’s
genitals for the indecency with a child offense, because there was evidence
that the defendant touched the child’s sexual organ with his hand and placed
the child’s sexual organ in his mouth); Romero v. State, Nos. 04-98-00026-CR,
04-98-00027-CR, 1999 WL 33108, at *8 (Tex. App.—San Antonio Jan. 27, 1999,
no pet.) (not designated for publication) (turning to “a review of the evidence”
to determine the propriety of the submission of both indecency with a child and
aggravated sexual assault of a child).

          Based
on the foregoing authority, because the evidence in this case—appellant’s
touching Taylor’s genitals with both his hand and his penis—justified the
submission of both aggravated sexual assault and indecency with a child by
contact to the jury, we hold that the trial court did not err by overruling
appellant’s motion for an election and that appellant was not subjected to
double jeopardy by being convicted of both offenses.[7] 
See Ochoa, 982 S.W.2d at 906–08.  We overrule appellant’s first issue.

Appellant’s
Argument Concerning Ineffective Assistance of Counsel

          In
his second issue, appellant contends that his trial counsel was ineffective
because counsel informed the jury that he was appointed to represent
appellant.  During his introductory statement to the jury panel in voir dire,
appellant’s counsel stated in part,

The people in the jury box, the judges of the facts, don’t
get to pick the law that they get to follow. . . .  And if there’s
a legal issue, the lawyers address it to [the trial court] in the proper form .
. . and [the court] makes the determinations of what you, as a jury, can or can’t
hear based upon the rules of evidence or purpose or procedure or whatever.

          . . . .

          Now, all of us have rules in their particular
place of work or at home, and it’s no different here in the courtroom.  Right
now, y’all are not before the bar. The bar is this -- well, a bar.  Okay.  And
basically, everybody on this side has a public duty to perform, whether it be
an appointed defense lawyer like me or a prosecutor, judge, court reporter,
clerk, whoever.  Once we take an oath to perform a public duty, we can’t let
our personal feelings come into the case at all.

          When you get to be a juror, you will come in
front of the bar because you will have sworn to perform a public duty, and you
have to leave your personal feelings alone also.

          Now, does it mean you lose your common sense? 
No.  What it means is this:  You have to put your personal feelings aside, as
long as you follow the rules and you listen to the evidence fairly to both sides. 
That’s what it means.  Okay.  We’re not asking you to give up anything that you
should use, like your common sense.  Okay.  Anybody have any questions or
problems with that?

          While
recognizing that he has been unable to find Texas cases that support his
argument, appellant contends that there was “no conceivable trial strategy for
telling a jury that [counsel] is court appointed.  The only reason for doing so
is to insulate oneself from his client, and to let the jury know that trial
counsel did not represent the Appellant by choice.”

          To
establish ineffective assistance of counsel, the appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex.
Crim. App. 2009).  In other words, for a claim of ineffective assistance of
counsel to succeed, the record must demonstrate both deficient performance by
counsel and prejudice suffered by the defendant.  Menefield v. State,
363 S.W.3d 591, 592 (Tex. Crim. App. 2012).  The record must affirmatively
demonstrate the meritorious nature of a claim of ineffective assistance of
counsel.  Id. (quoting Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999)).

          In
evaluating the effectiveness of counsel under the deficient-performance prong,
we look to the totality of the representation and the particular circumstances
of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether
counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel’s conduct fell within a wide range of reasonable representation. 
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

          Direct
appeal is usually an inadequate vehicle for raising an
ineffective-assistance-of-counsel claim because the record is generally
undeveloped.  Menefield, 363 S.W.3d at 592–93; Thompson, 9 S.W.3d
at 813.  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Salinas,
163 S.W.3d at 740 (quoting Thompson, 9 S.W.3d at 813).  It is not
appropriate for an appellate court to simply infer ineffective assistance based
upon unclear portions of the record.  Mata v. State, 226 S.W.3d 425, 432
(Tex. Crim. App. 2007). Trial counsel “should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.”  Menefield,
363 S.W.3d at 593 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex.
Crim. App. 2003)).  If trial counsel is not given that opportunity, then the
appellate court should not find deficient performance unless the challenged
conduct was “so outrageous that no competent attorney would have engaged in
it.”  Menefield, 363 S.W.3d at 593 (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).

          Under
some circumstances, when a defendant’s counsel makes prejudicial references to the
defendant, ineffective assistance may occur.  See, e.g., Ex parte
Guzmon, 730 S.W.2d 724, 733–34 (Tex. Crim. App. 1987) (holding that counsel
was ineffective because, in part, they repeatedly referred to their client as a
“wetback” when juror members had indicated during voir dire that illegal aliens
might not be entitled to as much protection as U.S. citizens).  We do not deem
appellant’s counsel’s comment, however, as the same type of prejudicial and inflammatory
comment at issue in Guzmon, and neither have other courts of appeals.  See
Troutt v. State, No. 10-10-00422-CR, 2011 WL 2641277, at *3 (Tex. App.—Waco
July 6, 2011, no pet.) (mem. op., not designated for publication) (concluding
that counsel was not ineffective for telling the jury that he was appointed
when the record was silent about counsel’s reasons for doing so); Morrison
v. State, No. 01-93-00429-CR, 1994 WL 599484, at *4 (Tex. App.—Houston [1st
Dist.] Nov. 3, 1994, pet. ref’d) (not designated for publication) (holding similarly). 
From the context of counsel’s comment, it appears that he was attempting to
implore jurors to follow their duty of objectivity by stating that each of the
other participants in the trial also had duties.  We cannot conclude, without
more, that making this comment caused the totality of appellant’s counsel’s
conduct to fall below prevailing professional norms.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064; Thompson, 9 S.W.3d at 813.

          The
cases cited by appellant are distinguishable.  In one case, upon the filing of
an application for a writ of habeas corpus, counsel explained that his reason
for telling the jury that he was appointed to represent the defendant was that,
essentially, it would have negatively affected counsel’s reputation in the
community if the community believed that he represented the defendant by
choice.  Goodwin v. Balkcom, 684 F.2d 794, 805–06 (11th Cir. 1982), cert.
denied, 460 U.S. 1098 (1983).[8]  The Eleventh Circuit
held that such an attitude by counsel tended to show that counsel’s total
representation had been adversely affected.  Id. at 806 (“Fears of
negative public reaction to the thought of representing an unpopular defendant
surely hamper every facet of counsel’s functions.”).  In the other case, a
dissenting opinion discussed how an attorney had not only told a jury that he
was appointed but had also referred to the defendant’s insanity defense as
“pitiful,” had suggested that he did not personally believe in the defense, and
had stated that he was disgusted by the crime the defendant was charged with.  People
v. Wade, 750 P.2d 794, 809–10 (op. on reh’g) (Broussard, J., dissenting), cert.
denied, 488 U.S. 900 (1988).  The circumstances here were substantially
less negative and supported a reasonable trial strategy.

          For
these reasons, we cannot hold that appellant has sustained his burden to prove
ineffective assistance of counsel by a preponderance of the evidence.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  We therefore overrule his second
issue.

Conclusion

          Having
overruled both of appellant’s issues, we affirm the trial court’s judgments of
conviction.

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GARDNER, JJ.

 

DAUPHINOT,
J., filed a dissenting opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 28,
2013

 

 

 

 

 

 









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00419-CR

 

 


 
 
 Lee A. Rushton
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 213th
District Court OF Tarrant COUNTY

----------

DISSENTING
OPINION

----------

Respectfully,
I cannot join the majority opinion, and I write separately to correct the
majority’s apparent misunderstanding of female anatomy.  To be fair, the
majority merely repeats the State’s apparent misunderstanding.  But that
misunderstanding has significant implications when addressing Appellant’s
objections to the jury charge.

Words
have meaning.  In the law, as in other endeavors, words are important.  In the
indictment in this case, the State alleged “sexual contact by touching the
vagina” of the complainant.  The indictment also alleged that Appellant caused
“the sexual organ of [the complainant] . . . to contact [his] sexual organ.”

The
majority states as fact that Appellant touched the complainant’s leg and vagina
with his hand and then inserted his penis into her vagina.  Appellant argued in
the trial court, as he argues here, that the indictment authorized the jury
charge that allowed the jury to find him guilty of the two offenses of touching
the complainant’s sexual organ with his penis and touching her vagina with his
penis.  That is, the indictment and the jury charge permitted the jury to
convict Appellant of two offenses as a result of a single act, violating state
and federal constitutional prohibitions against double jeopardy.[9]

The
vagina, unlike the more expansive terms “genitals,” “genitalia,” and “sexual
organ,” is exclusively an internal organ; it is a tube that lies between the
hymen and the cervix.[10]  It is not to be
confused with the vulva, which comprises the external female genitalia:  the
labia majora, labia minora, clitoris, and vestibule of the vagina into which
the vagina opens but which is not the vagina.[11]

Unlike
the word “vagina,” the term “sexual organ” includes both internal and external
genitalia.  The importance of this distinction has been explained by the Texas
Court of Criminal Appeals, as well as by this court:

Expert testimony in the case described
the female sexual organ as being comprised of an external and an internal
part.  The external part consists of outer vaginal lips, or labia majora, which
enfold an opening to the internal organ or vaginal canal.  Clinical examination
of the complainant in this case disclosed a healing wound under the fold of
these lips, near the vaginal entrance.  The examining physician testified that
this injury was “not actually inside the vagina . . . [but] beneath the hymen .
. . on the skin that’s called the introitus[.]”  However, he also opined that
the injury was “entirely consistent with penetration of the vagina,” by which
he meant that the injury was caused by an object passing “within the plane of
the sex organ.”[12]

And
this court has explained that “touching the vagina” perforce requires
penetration of the female sexual organ beyond mere contact:

[T]he vagina is an internal organ.  It is a canal that
leads from the uterus of a female mammal to the external orifice of the genital
canal.  The hymen lies at the entrance to the vaginal canal.  The vagina,
therefore, cannot be brushed by the fingers unless the fingers penetrate the
hymen.[13]

If
the purposes of an indictment are to provide notice of what must be proved, to
govern the “hypothetically correct” jury charge, and to prevent a person’s
being placed in repeated jeopardy for the same criminal act,[14]
then we cannot cavalierly rewrite the plain meaning of words.

When
the indictment alleged that Appellant caused the complainant’s sexual organ to
contact his sexual organ (count one) and that Appellant touched the vagina of
the complainant but did not also allege which part of his body or inanimate
object he used to touch her vagina (count three), and the complainant testified
that Appellant touched her vagina with both his hand and his penis, the jury
could have convicted Appellant of both offenses by finding only that he
penetrated her vagina with his penis.  Penetration of the vagina is not
possible without contacting the sexual organ, which includes the vagina.

Because
the majority wholly fails to address this important issue, and because the
majority appears to use the term “vagina” in referring to the vulva, I cannot
join the majority and must respectfully dissent.

 

 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PUBLISH

 

DELIVERED:  February 28,
2013









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 21.11(a)(1), (c)(1) (West 2011), § 22.021(a)(1)(B)(iii),
(2)(B) (West Supp. 2012).





[3]To protect the victim’s
anonymity, we will use a pseudonym.  See Daggett v. State, 187 S.W.3d
444, 446 n.3 (Tex. Crim. App. 2005); McClendon v. State, 643 S.W.2d
936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).





[4]The trial court found that
the indictment’s enhancement paragraph, which alleged that appellant had been
previously convicted of a felony, was true.





[5]See U.S. Const.
amend. V.





[6]152 S.W.3d 88 (Tex. Crim.
App. 2004).





[7]We note that through the
State’s closing argument, the jury became aware that the State was relying on
genital-to-genital contact for the aggravated sexual assault conviction and on
hand-to-genital contact for the indecency with a child by contact conviction.  The
prosecutor said in part,

The first offense involves aggravated sexual assault of a
child.  We’re talking about the act of contacting one sexual organ to a child’s
sexual organ.  That’s the act.

          In the second count, we’re not talking about
that kind of contact.  We’re talking about the fact that [Taylor] testified to
you that prior to this man climbing up on top of her, he removed her pants, he removed
her underwear, and he took his hand, and he touched her vagina.  That’s the
second act we’re talking about.





[8]Cases from federal courts
of appeals may be persuasive, but they are not precedential.  Bundy v. State,
280 S.W.3d 425, 432 n.5 (Tex. App.—Fort Worth 2009, pet. ref’d).





[9]See Evans v.
State, 299 S.W.3d 138 (Tex. Crim. App. 2009); Ochoa v. State,
982 S.W.2d 904, 908, 909–11 (Tex. Crim. App. 1998) (majority op. and Keller,
J., concurring).





[10]See Taber’s
Cyclopedic Medical Dictionary V-3 (11th ed. 1970).





[11]Id. at V-27.





[12]Vernon v. State,
841 S.W.2d 407, 409 (Tex. Crim. App. 1992).





[13]Tyler v. State,
950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.) (citation
omitted).





[14]See, e.g., Byrd
v. State, 336 S.W.3d 242, 257 (Tex. Crim. App. 2011).