

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00419-CR**

| | | |
|---|---|---|
| Lee A. Rushton | § | From the 213th District Court |
| | § | of Tarrant County (1191333D) |
| v. | § | February 28, 2013 |
| | § | Per Curiam (nfp) |
| The State of Texas | § | Dissent by Justice Dauphinot (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00419-CR**

LEE A. RUSHTON | APPELLANT

V.

THE STATE OF TEXAS | STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two issues, appellant Lee A. Rushton appeals his convictions for indecency with a child by contact and aggravated sexual assault of a child.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 21.11(a)(1), (c)(1) (West 2011), § 22.021(a)(1)(B)(iii), (2)(B) (West Supp. 2012).

## Background Facts

When Taylor[3] was eight years old, she and her mother moved into a three-bedroom apartment in Fort Worth. At some point, appellant became Taylor's mother's boyfriend, and he moved into the apartment. Taylor's mother, who used drugs and drank too much alcohol, often left Taylor alone with appellant. On one of those occasions, at night, appellant asked Taylor, who was nine years old at the time, to lie with him on a couch. When Taylor did so, appellant touched her legs, pulled her pajama pants and underwear off, pulled his own pants off, touched her vagina with his hand, got on top of her, and inserted his penis into her vagina. Taylor felt pain and bled from her vagina. Appellant told Taylor to not say anything about what had occurred, but Taylor told her mother and later told her fifteen-year-old sister, who was living in El Paso, about what appellant had done.

Taylor eventually moved in with her godparents and also told them about what had happened with appellant. Taylor's godparents did not immediately notify the authorities about what Taylor had said. Later, Taylor moved back in with her mother.

When Taylor was sixteen years old, her older cousin, with whom Taylor had lived for a short time, told Child Protective Services (CPS) about Taylor's

---

[3]To protect the victim's anonymity, we will use a pseudonym. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

sexual encounter with appellant. A CPS employee interviewed Taylor and learned about appellant's sexual contact with her. Taylor later spoke with a police officer about appellant's crimes. The police arrested appellant.

Appellant's indictment included, among other allegations, charges of aggravated sexual assault of a child (based on an assertion that appellant intentionally or knowingly caused Taylor's sexual organ to contact his own sexual organ when Taylor was younger than fourteen years old) and indecency with a child by contact (based on an assertion that appellant, with the intent to arouse or gratify his sexual desire, engaged in sexual contact with Taylor by touching her vagina). The trial court appointed counsel to represent appellant. Appellant chose the trial court to assess his punishment in the event that he was convicted.

At trial, appellant pled not guilty. After receiving the evidence and deliberating for approximately twenty minutes, the jury convicted appellant of both offenses. The trial court assessed concurrent thirty-year sentences for each of the offenses.[4] Appellant brought this appeal.

**Request for Election Between Offenses**

In his first issue, appellant contends that the indecency with a child by contact offense should not have been submitted to the jury because the jury charge did not specify the manner of contact, and the jury could have therefore based its indecency with a child by contact conviction on the same penile-to-

[4]The trial court found that the indictment's enhancement paragraph, which alleged that appellant had been previously convicted of a felony, was true.

vaginal contact that resulted in the aggravated sexual assault conviction. Appellant argues that the trial court should have required the State to elect to proceed on only one of the two counts and that the submission of both counts violated his constitutional protection against double jeopardy.[5]

After both parties rested, but before the jury received its charge or the parties made closing arguments, appellant's counsel asked the trial court to require the State to elect to proceed on either aggravated sexual assault or indecency with a child by contact, stating,

> Count One of this indictment alleges a sexual assault by touching the female sexual organ with the male sexual organ of the defendant. Count Two was waived, so we're now dealing with Count Three. And Count Three also alleges a sexual contact by touching the vagina, and it doesn't say in what manner. We would submit under the [*Patterson v. State*[6]] analysis by the Court of Criminal Appeals, that Count Three or Count One, the State needs to make an election, because they can't get a conviction off of both the way they've alleged it.
>
> . . . .
>
> . . . [*Patterson*] is an identical situation to this where you have an aggravated sexual assault of a child case of a touching of the female sexual organ, and then they had a second conviction in the same case for indecency with a child by sexual contact by touching the female sexual organ.
>
> . . . [*Patterson*] says that under the situation we have here, it invites the jury to find one act and get two convictions, which is a violation of double jeopardy. That's a position we're advancing to the Court because in this situation, the jury could quite well find a

[5] *See* U.S. Const. amend. V.

[6] 152 S.W.3d 88 (Tex. Crim. App. 2004).

> penetration by the penis to the female sexual organ and convict under both counts because there's not a limitation under Count Three as to how the touching occurred.

In response to appellant's oral motion for an election, a prosecutor stated,

> Paragraph One is an allegation of aggravated sexual assault in that the touching is genital-to-genital. . . . Count Three is an allegation of indecency with a child by sexual contact, and that can be -- it can be by any means other than genital-to-genital. The . . . victim testified that he touched her and actually penetrated her, much less contacted her with his penis to her female sexual organ, and she also testified that he used his hand to touch . . . her sexual organ.

The trial court indicated that it would rule on appellant's motion for an election on the next day.

The following morning, appellant again urged the motion, asking the court to require the "State to elect with regards to Count One . . . and Count Three." The State contended that the evidence that had been presented established two separate offenses because the genital-to-genital contact qualified as aggravated sexual assault and the hand-to-genital contact qualified as indecency with a child. The trial court denied appellant's "motion to require the State to elect which count [they were] going to proceed on," and the court submitted a jury charge on both counts. Specifically, the charge instructed the jury to find appellant guilty of aggravated sexual assault of a child if it found beyond a reasonable doubt that Taylor was younger than fourteen years old when appellant intentionally or knowingly caused her sexual organ to contact his sexual organ, and the charge instructed the jury to find appellant guilty of indecency with a child by contact if it found beyond a reasonable doubt that "with

intent to arouse or gratify [his] sexual desire . . ., [he] engage[d] in sexual contact by touching [Taylor's] vagina."

On appeal, relying on *Patterson*, appellant argues that the trial court's ruling and jury charge were improper because although the jury could have found that the indecency with a child by contact conviction was based "on the separate act of the Appellant touching the alleged victim with his hand," there was a chance that the jury found appellant guilty of the indecency with a child by contact offense for the genital to genital touching that supported the aggravated sexual assault conviction.

In *Patterson*, the State had charged Patterson with five offenses arising from two sexual encounters that he had with an eleven-year-old girl. 152 S.W.3d at 89. The jury convicted Patterson of all five charges, but he alleged that some of the convictions violated the constitutional prohibition against double jeopardy. *Id.* Particularly, he asserted that double jeopardy principles precluded convictions for aggravated sexual assault of a child and indecency with a child by exposure when the exposure occurred prior to the sexual assault. *See id.* The court of criminal appeals, although not directly addressing double jeopardy, held that convictions could not be obtained for both offenses, explaining in part,

> While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize "stop-action" prosecution. . . .
>
> . . . The record in this case does not show an occasion during the assaults when the exposure was a separate offense. Under the

> facts of these incidents, exposure was incident to and subsumed by the aggravated sexual assault.

*Id.* at 92.

While the court of criminal appeals's rationale in *Patterson*, along with the law discussed in that opinion, prevents convictions for sexual offenses that are incident to and subsumed by other sexual offenses, *see McGlothlin v. State*, 260 S.W.3d 124, 127–28 (Tex. App.—Fort Worth 2008, pet. ref'd), multiple convictions may be obtained for different sexual acts occurring in the same episode when those acts are not subsumed within each other. *See id.* at 126–29; *see also Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999) (holding that convictions may be obtained both for the defendant's penile penetration of a child's sexual organ and the defendant's oral contact with a child's sexual organ even when those acts occur in "close temporal proximity"); *Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd) ("Although the two acts in T.H.'s case may have been committed during the same occurrence, appellant's touching of T.H.'s genitals with his finger was a separate and distinct criminal act from contacting her sexual organ with his penis."), *cert. denied*, 539 U.S. 916 (2003); *Hutchins v. State*, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref'd) ("Although the two acts were committed in close temporal proximity, appellant's touching of L.M.'s genitals with his fingers was a separate and distinct act from his penetration of her female sexual organ with his penis.").

Appellant appears to recognize that his sexual contact with Taylor by his hand and by his penis could comprise distinct offenses, but he nonetheless argues that the State should have been required to elect between the two offenses because the jury charge did not specify which manner of touching supported indecency with a child by contact. Precedent from the court of criminal appeals and our own court, however, compels us to reach the opposite conclusion.

In *Ochoa v. State*, the State had charged Ochoa with five counts of aggravated sexual assault occurring on five distinct dates and five counts of indecency with a child occurring on the same dates. 982 S.W.2d 904, 905 (Tex. Crim. App. 1998). A jury convicted Ochoa of one count of aggravated sexual assault and one count of indecency with a child, with each offense having occurred on the same day. *Id.* Ochoa had complained at trial that the State should not have been able to convict him for both offenses and had requested the State to elect the offense upon which it would proceed, but the trial court had overruled his objection to the submission of both offenses. *Id.* at 906–07. In affirming a court of appeals's reversal of Ochoa's conviction for indecency with a child, the court of criminal appeals stated,

> [T]he [court of appeals] should have focused on *whether the evidence in this case justified* the trial court in submitting instructions that would permit the jury to convict and sentence appellant both for committing aggravated sexual assault and for committing indecency with a child on June 16, 1994. . . .

> In [Ochoa's] trial, the State presented evidence of only one sexual offense committed by [Ochoa] against C.O. on June 16, 1994. C.O. did not testify that [Ochoa] touched her more than one time on that day. . . .
>
> . . . .
>
> . . . *Because there was evidence of only one offense* committed by [Ochoa], . . . *we hold that the State should have elected which offense upon which it would proceed* or, in the alternative, received a submission of the offense of indecency with a child to the jury only as a lesser-included alternative to the offense of aggravated sexual assault.
>
> The State was not entitled to seek convictions for two offenses *because the evidence at trial shows* that only one offense was committed.

*Id.* at 907–08 (emphasis added).

Similarly, in *Bottenfield*, we considered whether a trial court had erred by denying a defendant's request to require the State to elect between seeking a conviction for aggravated sexual assault or indecency with a child by contact. 77 S.W.3d at 357. We resolved that question based on whether the "*evidence justified the trial court* in submitting instructions that would permit the jury to convict and sentence appellant both for committing aggravated sexual assault and for committing indecency with a child . . . [in other words], *whether the evidence show[ed]* [Bottenfield] committed two separate offenses." *Id.* at 357–58 (emphasis added). Applying this test, we held that because Bottenfield's "conviction for aggravated sexual assault was not based on the same conduct underlying his conviction for indecency, the evidence was sufficient to show that

more than one offense was committed by [him], and submission of both aggravated sexual assault and indecency was proper." *Id.* at 358.

Finally, in *Hutchins*, similar to the charges in this case, the State had charged Hutchins in one count with penetrating a child's female sexual organ with his penis and had charged him in another count with touching the same child's genitals with the intent to arouse and gratify his sexual desire, without specifying how the touching occurred. 992 S.W.2d at 631. The child testified that Hutchins had touched her private area with his fingers and his genitals. *Id.* The Austin Court of Appeals held that convictions could be obtained for both offenses without violating double jeopardy, explaining,

> If the evidence . . . showed that the only act of sexual contact committed by appellant . . . was the contact incident to appellant's penetration of L.M. with his penis, or if the court's jury charge had required the jury to find that appellant touched L.M. with his penis, we would . . . agree with appellant that he could not be convicted for both aggravated sexual assault and indecency with a child by contact. *See Ochoa*, 982 S.W.2d at 907–08. But neither the evidence nor the charge was so limited. L.M. testified that appellant touched her genitals with his fingers before penetrating her with his penis. The jury charge, tracking the indictment, required the jury to find only that appellant touched L.M.'s genitals with the requisite intent; the charge did not require a finding that appellant touched L.M. with his penis. Although the two acts were committed in close temporal proximity, appellant's touching of L.M.'s genitals with his fingers was a separate and distinct act from his penetration of her female sexual organ with his penis. Because appellant has not shown that his conviction for indecency with a child by contact was based on the same conduct underlying his conviction for aggravated sexual assault of a child, his contention that these convictions constitute multiple punishments for the same offense is without merit.

*Id.* at 633; *see also Bailey v. State*, No. 02-05-00394-CR, 2007 WL 79544, at *7–8 (Tex. App.—Fort Worth Jan. 11, 2007, pet. ref'd) (mem. op., not designated for publication) (holding that it was proper for the trial court's charge to include both "aggravated sexual assault of a child by penetration" and "indecency with a child by contacting the genitals of a child" because evidence existed that the defendant touched the victim's genitals with both his finger and his penis); *Reyes v. State*, No. 04-03-00474-CR, 2004 WL 1665906, at *3 (Tex. App.—San Antonio July 28, 2004, no pet.) (mem. op., not designated for publication) (holding that the "concept of mandating an election by the State" between aggravated sexual assault and indecency with a child charges was inapplicable because the State "ha[d] proven that there were two distinct and separate acts"); *Beltran v. State*, 30 S.W.3d 532, 534 (Tex. App.—San Antonio 2000, no pet.) (holding that submission of both aggravated sexual assault and indecency with a child by contact to the jury was proper, even though the indictment did not specify the manner of contacting the child's genitals for the indecency with a child offense, because there was evidence that the defendant touched the child's sexual organ with his hand and placed the child's sexual organ in his mouth); *Romero v. State*, Nos. 04-98-00026-CR, 04-98-00027-CR, 1999 WL 33108, at *8 (Tex. App.—San Antonio Jan. 27, 1999, no pet.) (not designated for publication) (turning to "a review of the evidence" to determine the propriety of the submission of both indecency with a child and aggravated sexual assault of a child).

Based on the foregoing authority, because the evidence in this case—appellant's touching Taylor's genitals with both his hand and his penis—justified the submission of both aggravated sexual assault and indecency with a child by contact to the jury, we hold that the trial court did not err by overruling appellant's motion for an election and that appellant was not subjected to double jeopardy by being convicted of both offenses.[7] *See Ochoa*, 982 S.W.2d at 906–08. We overrule appellant's first issue.

**Appellant's Argument Concerning Ineffective Assistance of Counsel**

In his second issue, appellant contends that his trial counsel was ineffective because counsel informed the jury that he was appointed to represent appellant. During his introductory statement to the jury panel in voir dire, appellant's counsel stated in part,

> The people in the jury box, the judges of the facts, don't get to pick the law that they get to follow. . . . And if there's a legal issue, the lawyers address it to [the trial court] in the proper form . . . and [the

---

[7]We note that through the State's closing argument, the jury became aware that the State was relying on genital-to-genital contact for the aggravated sexual assault conviction and on hand-to-genital contact for the indecency with a child by contact conviction. The prosecutor said in part,

> The first offense involves aggravated sexual assault of a child. We're talking about the act of contacting one sexual organ to a child's sexual organ. That's the act.
>
> In the second count, we're not talking about that kind of contact. We're talking about the fact that [Taylor] testified to you that prior to this man climbing up on top of her, he removed her pants, he removed her underwear, and he took his hand, and he touched her vagina. That's the second act we're talking about.

> court] makes the determinations of what you, as a jury, can or can't hear based upon the rules of evidence or purpose or procedure or whatever.
>
> . . . .
>
> Now, all of us have rules in their particular place of work or at home, and it's no different here in the courtroom. Right now, y'all are not before the bar. The bar is this -- well, a bar. Okay. And basically, everybody on this side has a public duty to perform, whether it be an appointed defense lawyer like me or a prosecutor, judge, court reporter, clerk, whoever. Once we take an oath to perform a public duty, we can't let our personal feelings come into the case at all.
>
> When you get to be a juror, you will come in front of the bar because you will have sworn to perform a public duty, and you have to leave your personal feelings alone also.
>
> Now, does it mean you lose your common sense? No. What it means is this: You have to put your personal feelings aside, as long as you follow the rules and you listen to the evidence fairly to both sides. That's what it means. Okay. We're not asking you to give up anything that you should use, like your common sense. Okay. Anybody have any questions or problems with that?

While recognizing that he has been unable to find Texas cases that support his argument, appellant contends that there was "no conceivable trial strategy for telling a jury that [counsel] is court appointed. The only reason for doing so is to insulate oneself from his client, and to let the jury know that trial counsel did not represent the Appellant by choice."

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have

been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). The record must affirmatively demonstrate the meritorious nature of a claim of ineffective assistance of counsel. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. To overcome the presumption of reasonable professional assistance, "any allegation of

ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Menefield*, 363 S.W.3d at 593 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Under some circumstances, when a defendant's counsel makes prejudicial references to the defendant, ineffective assistance may occur. *See, e.g.*, *Ex parte Guzmon*, 730 S.W.2d 724, 733–34 (Tex. Crim. App. 1987) (holding that counsel was ineffective because, in part, they repeatedly referred to their client as a "wetback" when juror members had indicated during voir dire that illegal aliens might not be entitled to as much protection as U.S. citizens). We do not deem appellant's counsel's comment, however, as the same type of prejudicial and inflammatory comment at issue in *Guzmon*, and neither have other courts of appeals. *See Troutt v. State*, No. 10-10-00422-CR, 2011 WL 2641277, at *3 (Tex. App.—Waco July 6, 2011, no pet.) (mem. op., not designated for

publication) (concluding that counsel was not ineffective for telling the jury that he was appointed when the record was silent about counsel's reasons for doing so); *Morrison v. State*, No. 01-93-00429-CR, 1994 WL 599484, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 1994, pet. ref'd) (not designated for publication) (holding similarly). From the context of counsel's comment, it appears that he was attempting to implore jurors to follow their duty of objectivity by stating that each of the other participants in the trial also had duties. We cannot conclude, without more, that making this comment caused the totality of appellant's counsel's conduct to fall below prevailing professional norms. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Thompson*, 9 S.W.3d at 813.

The cases cited by appellant are distinguishable. In one case, upon the filing of an application for a writ of habeas corpus, counsel explained that his reason for telling the jury that he was appointed to represent the defendant was that, essentially, it would have negatively affected counsel's reputation in the community if the community believed that he represented the defendant by choice. *Goodwin v. Balkcom*, 684 F.2d 794, 805–06 (11th Cir. 1982), *cert. denied*, 460 U.S. 1098 (1983).[8] The Eleventh Circuit held that such an attitude by counsel tended to show that counsel's total representation had been adversely affected. *Id.* at 806 ("Fears of negative public reaction to the thought

---

[8]Cases from federal courts of appeals may be persuasive, but they are not precedential. *Bundy v. State*, 280 S.W.3d 425, 432 n.5 (Tex. App.—Fort Worth 2009, pet. ref'd).

of representing an unpopular defendant surely hamper every facet of counsel's functions."). In the other case, a dissenting opinion discussed how an attorney had not only told a jury that he was appointed but had also referred to the defendant's insanity defense as "pitiful," had suggested that he did not personally believe in the defense, and had stated that he was disgusted by the crime the defendant was charged with. *People v. Wade*, 750 P.2d 794, 809–10 (op. on reh'g) (Broussard, J., dissenting), *cert. denied*, 488 U.S. 900 (1988). The circumstances here were substantially less negative and supported a reasonable trial strategy.

For these reasons, we cannot hold that appellant has sustained his burden to prove ineffective assistance of counsel by a preponderance of the evidence. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We therefore overrule his second issue.

**Conclusion**

Having overruled both of appellant's issues, we affirm the trial court's judgments of conviction.

PER CURIAM

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DAUPHINOT, J., filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 28, 2013




# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-11-00419-CR**

| LEE A. RUSHTON | APPELLANT |
|---|---|
| V. | |
| THE STATE OF TEXAS | STATE |

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

Respectfully, I cannot join the majority opinion, and I write separately to correct the majority's apparent misunderstanding of female anatomy. To be fair, the majority merely repeats the State's apparent misunderstanding. But that misunderstanding has significant implications when addressing Appellant's objections to the jury charge.

Words have meaning. In the law, as in other endeavors, words are important. In the indictment in this case, the State alleged "sexual contact by

touching the vagina" of the complainant. The indictment also alleged that Appellant caused "the sexual organ of [the complainant] . . . to contact [his] sexual organ."

The majority states as fact that Appellant touched the complainant's leg and vagina with his hand and then inserted his penis into her vagina. Appellant argued in the trial court, as he argues here, that the indictment authorized the jury charge that allowed the jury to find him guilty of the two offenses of touching the complainant's sexual organ with his penis and touching her vagina with his penis. That is, the indictment and the jury charge permitted the jury to convict Appellant of two offenses as a result of a single act, violating state and federal constitutional prohibitions against double jeopardy.[1]

The vagina, unlike the more expansive terms "genitals," "genitalia," and "sexual organ," is exclusively an internal organ; it is a tube that lies between the hymen and the cervix.[2] It is not to be confused with the vulva, which comprises the external female genitalia: the labia majora, labia minora, clitoris, and vestibule of the vagina into which the vagina opens but which is not the vagina.[3]

---

[1]*See Evans v. State*, 299 S.W.3d 138 (Tex. Crim. App. 2009); *Ochoa v. State*, 982 S.W.2d 904, 908, 909–11 (Tex. Crim. App. 1998) (majority op. and Keller, J., concurring).

[2]*See* Taber's Cyclopedic Medical Dictionary V-3 (11th ed. 1970).

[3]*Id.* at V-27.

Unlike the word "vagina," the term "sexual organ" includes both internal and external genitalia. The importance of this distinction has been explained by the Texas Court of Criminal Appeals, as well as by this court:

> Expert testimony in the case described the female sexual organ as being comprised of an external and an internal part. The external part consists of outer vaginal lips, or labia majora, which enfold an opening to the internal organ or vaginal canal. Clinical examination of the complainant in this case disclosed a healing wound under the fold of these lips, near the vaginal entrance. The examining physician testified that this injury was "not actually inside the vagina . . . [but] beneath the hymen . . . on the skin that's called the introitus[.]" However, he also opined that the injury was "entirely consistent with penetration of the vagina," by which he meant that the injury was caused by an object passing "within the plane of the sex organ."[4]

And this court has explained that "touching the vagina" perforce requires penetration of the female sexual organ beyond mere contact:

> [T]he vagina is an internal organ. It is a canal that leads from the uterus of a female mammal to the external orifice of the genital canal. The hymen lies at the entrance to the vaginal canal. The vagina, therefore, cannot be brushed by the fingers unless the fingers penetrate the hymen.[5]

If the purposes of an indictment are to provide notice of what must be proved, to govern the "hypothetically correct" jury charge, and to prevent a

[4]*Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992).

[5]*Tyler v. State*, 950 S.W.2d 787, 789 (Tex. App.—Fort Worth 1997, no pet.) (citation omitted).

person's being placed in repeated jeopardy for the same criminal act,[6] then we cannot cavalierly rewrite the plain meaning of words.

When the indictment alleged that Appellant caused the complainant's sexual organ to contact his sexual organ (count one) and that Appellant touched the vagina of the complainant but did not also allege which part of his body or inanimate object he used to touch her vagina (count three), and the complainant testified that Appellant touched her vagina with both his hand and his penis, the jury could have convicted Appellant of both offenses by finding only that he penetrated her vagina with his penis. Penetration of the vagina is not possible without contacting the sexual organ, which includes the vagina.

Because the majority wholly fails to address this important issue, and because the majority appears to use the term "vagina" in referring to the vulva, I cannot join the majority and must respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: February 28, 2013

---

[6] *See, e.g.*, *Byrd v. State*, 336 S.W.3d 242, 257 (Tex. Crim. App. 2011).